[Cite as *State v. McElhaney*, 2015-Ohio-349.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :        C.A. CASE NO.    2014-CA-9

**v.**                                           :        T.C. NO.    13 CR 587

MARK A. McELHANEY                                :        (Criminal appeal from
                                                          Common Pleas Court)
                                                          Defendant-Appellant
                                                 :

                                                 :

          . . . . . . . . . .

**O P I N I O N**

Rendered on the   30th   day of    January   , 2015.

          . . . . . . . . . .

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, 55 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 1502 Liberty Tower, 120 W. Second Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

          . . . . . . . . . . . .

FROELICH, P.J.

{¶ 1} Mark McElhaney appeals from a judgment of the Greene County Court of Common Pleas, which found him guilty of several drug-related offenses and sentenced him to an aggregate term of 9½ years in prison.

{¶ 2} On appeal, McElhaney's attorney filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that she was "unable to find any meritorious issues for appeal." McElhaney was advised of the nature of his counsel's brief and that he could file a pro se brief assigning errors for review by this court. McElhaney was further advised that, absent such a filing, the appeal would be deemed submitted on its merits. No pro se brief has been received. The case is now before us for our independent review of the record. *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).

{¶ 3} McElhaney was indicted on multiple counts of possession of drugs, aggravated possession of drugs, trafficking in drugs, and aggravated trafficking in drugs, as well as single counts of illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and having weapons under disability. Forfeiture specifications were also included in the indictment. McElhaney moved unsuccessfully to have his case dismissed on speedy trial grounds before trial. One count of aggravated trafficking and the count of having weapons under disability were dismissed before trial.

{¶ 4} McElhaney was tried by a jury in February 2014. He was found guilty of two counts of possession of drugs, two counts of aggravated possession, three counts of trafficking, and two counts of aggravated trafficking, all felonies of the third, fourth, or fifth degree. He was also found guilty of illegal assembly or possession of chemicals used in the manufacture of drugs, a felony of the third degree, and of one misdemeanor count of possession. McElhaney was found not guilty of one count of aggravated possession and the illegal manufacture of drugs. With respect to the forfeiture specifications, the jury found that some of McElhaney's property, listed in Exhibit 17 and identified as "all

seized illegal drug related items," was subject to forfeiture.

{¶ 5}  At sentencing, four of the counts of possession or aggravated possession were merged into the counts of trafficking or aggravated trafficking.   McElhaney was sentenced to consecutive terms of imprisonment, for an aggregate term of 9½ years, none of which was mandatory time.   *See* Chart, infra.

{¶ 6}  McElhaney's attorney raises three potential arguments on appeal, but has concluded that these arguments lack merit.   The arguments relate to whether McElhaney's speedy trial rights were violated, whether the weight of the evidence supported his convictions, and whether the seriousness and recidivism factors were properly weighed at sentencing.

{¶ 7} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.   In Ohio, R.C. 2945.71 requires the State to bring a felony defendant to trial within 270 days of arrest.   R.C. 2945.71(C).   Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three pursuant to the triple-count provision of R.C. 2945.71(E).   This "triple-count" provision reduces to 90 days the time for bringing to trial an accused who is incarcerated the entire time preceding trial.   *State v. Dankworth*, 172 Ohio App.3d 159, 2007-Ohio-2588, 873 N.E.2d 902, ¶ 31 (2d Dist.).

{¶ 8}  Pursuant to R.C. 2945.72(H), the time within which an accused must be brought to trial is extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

{¶ 9}  McElhaney was arrested on November 19, 2013, and was held in jail in lieu

of bail until trial. Under the provision requiring McElhaney to be tried within 90 days, his trial had to begin no later than February 17, 2014. However, on December 18, 2013, McElhaney filed a motion to continue the trial date so he would have more time to prepare. The original trial date (January 24, 2014) was rescheduled, without explanation, while this motion was pending. On February 10, 2014, the trial court granted McElhaney's motion for a continuance. The trial began on February 24, 2014.

{¶ 10} McElhaney's motion tolled the speedy trial time for several weeks. R.C. 2945.72(H). For statutory speedy trial purposes, McElhaney was brought to trial in less than the 90-day triple-count time limitation of R.C. 2945.71. We agree with appellate counsel that a speedy trial argument does not have arguable merit.

{¶ 11} McElhaney's second possible assignment of error raises issues related to both the weight and sufficiency of the evidence, although the argument is framed in terms of the weight of the evidence. Sufficiency and manifest-weight challenges are separate and legally distinct determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 17-19 (2d Dist.), citing *State v. Adelman*, 9th Dist. Summit No. 18824, 1998 WL 852565 (Dec. 9, 1998).

{¶ 12} A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *Thompkins* at 386. Under a sufficiency analysis, an appellate court does not make any determinations regarding the

credibility of witnesses. *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998), citing *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 13} In contrast, when reviewing a judgment under a manifest-weight standard of review, " '[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} The State presented the following evidence at trial. The defense did not call any witnesses.

{¶ 15} In early 2013, Josh McComas approached law enforcement officials about drug dealing by McElhaney at 1669 North Longview in Beavercreek Ohio; he subsequently worked with members of the A.C.E. Task Force, a group of regional law enforcement agencies that specializes in narcotics investigations. McComas apparently

felt "scorned" by McElhaney, because McComas's girlfriend received "dope" from or was otherwise involved with McElhaney. McComas told the task force about McElhaney's drug dealing and agreed to work with them on some controlled buys. McComas showed task force members the house on Longview and provided information about the usual manner of entering the house, the layout of the house, and the location of McElhaney's bedroom.

{¶ 16} Task force members and McComas testified about how a controlled buy is effectuated, including the task force member's listening to phone conversations to arrange a buy, their searching of the confidential informant (in this case, McComas) and his vehicle before and after the purchase, and the informant's wearing of a wire for audio and/or video during the transaction.

{¶ 17} On April 17, 22, and 23, 2013, McComas completed controlled purchases of methamphetamine, heroin, and/or Clonazepam at the Longview residence. On April 17, McComas attempted to purchase "shake and bake" meth (which is a lesser quality than crystal meth), but McElhaney did not have any, so McComas purchased crystal meth instead. On April 22, McComas purchased meth and heroin. On April 23, McComas requested seven grams of crystal meth from McElhaney, but McElhaney only had 3½ grams, so McComas purchased 3½ grams along with 15 capsules of Clonazepam. McComas was unaccompanied, but wired, during the first two purchases; on April 23, McComas was accompanied by undercover Detective Craig Black, and the transaction was recorded on audio and video. After these purchases, the task force obtained a search warrant for the Longview residence, which was executed on April 29, 2013. Drugs, cash, and drug paraphernalia were observed throughout the house, and a meth

lab was found in the basement. Although several people were in the house when the warrant was executed, McElhaney was not one of them. McElhaney was located at an address in Dayton a short time later and was arrested.

{¶ 18} State's witnesses, including a special agent from the Ohio Attorney General's Bureau of Criminal Investigation and a Greene County Sheriff's Department specialist with expertise in the identification and decontamination of meth labs, testified in detail about the processes used to manufacture meth, including the types of materials typically used in such an operation and the risks posed by the process. The special agent testified that Gatorade bottles, 2-liter bottles, Coleman fuel, lye, cold packs, coffee filters, ammonium nitrate, and stripped lithium batteries are used in the "one-pot" manufacturing process of methamphetamine. Most of these items were found in the basement of the Longview house. The special agent further testified that a hydrogen chloride gas generator is used in the process and that he found such a homemade generator in the basement of the house. He testified that the generator was "fairly fresh," as indicated by the facts that the plastic bottle had not yet degraded and the hose was still connected to the generator. The sheriff's department specialist also testified to the discovery of the one-pot meth lab in the basement of the Longview house, to the risks posed by such a lab, and to the precautions taken by law enforcement and fire personnel when such a lab is discovered and deconstructed.

{¶ 19} The owner of the Longview house, a friend of McElhaney, testified that McElhaney had paid his rent in cash and meth; he had provided the owner with meth 2-3 times per week. The owner also testified that she had been aware that McElhaney used the "shake and bake" method, that she had bought lithium batteries for him, and that

coffee filters had disappeared from her kitchen while McElhaney lived with her. The owner acknowledged that she had known of the meth lab in the basement (which had an external entrance) because of the amount of time McElhaney spent in the "nasty" basement, where there was nothing to do but laundry, and because of the chemical smells that emanated from it.

{¶ 20} A forensic chemist from the Miami Valley Regional Crime Lab confirmed the illicit nature of the suspected drugs taken from the Longview home.

{¶ 21} Based on the evidence presented, McElhaney's conviction was neither supported by insufficient evidence nor against the manifest weight of the evidence. We agree with counsel's conclusion that an assignment of error based on these claims lacks arguable merit.

{¶ 22} Finally, counsel suggests, as a possible assignment of error, that the trial court failed to consider the principles and purposes of sentencing set forth in R.C. 2929.11 and the recidivism factors set forth in R.C. 2929.12 in imposing sentence.

{¶ 23} In *State v. Rodeffer,* 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.), we held that we would no longer use an abuse-of-discretion standard in reviewing a felony sentence, but would apply the standard of review set forth in R.C. 2953.08(G)(2). Under this statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *Rodeffer* stated that "[a]lthough *[State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124] no longer provides the framework for reviewing felony sentences, it does provide * * * adequate guidance for determining

whether a sentence is clearly and convincingly contrary to law. * * * According to *Kalish,* a sentence is not contrary to law when the trial court imposes a sentence within the statutory range, after expressly stating that it had considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the factors in R .C. 2929.12." (Citations omitted) *Rodeffer* at ¶ 32. "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).

**{¶ 24}** R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶ 25}** R.C. 2929.12(B) sets forth nine factors indicating an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious. R.C. 2929.12(D) and (E)

each list five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes.

{¶ 26}   At sentencing, the trial court stated that it had considered the principles and purposes of sentencing (R.C. 2929.11) and had "balanced the seriousness and recidivism factors pursuant to 2929.12."   With respect to recidivism factors, the court observed that McElhaney had already been to prison several times and had previously committed an offense while on community control.   The court also noted that McElhaney had other felony charges pending at the time of sentencing.   The court described McElhaney's conduct as "reckless" and his criminal history as "pretty abysmal."   In sum, the court concluded that McElhaney's conduct "call[ed] for a significant punishment," including prison time and consecutive sentences.

{¶ 27}   The trial court also stated that it had considered the factors set forth in R.C. 2929.13(B)(1) related to the fourth and fifth degree felonies.   This section provides for the imposition of community control for non-violent felonies of the fourth or fifth degree if certain conditions apply, including that the defendant has not previously been convicted of a felony and has not been charged with an offense higher than a fourth degree felony. If the conditions are not met, the court has discretion pursuant to R.C. 2929.12(B)(2) to impose a prison term.   Having considered R.C. 2929.13(B), the court stated that it "retain[ed] discretion as to disposition" because McElhaney had previously been convicted of a felony and was charged with offenses of higher degree than a felony of the fourth degree.

{¶ 28} With respect to its imposition of consecutive sentences, the trial court was required by R.C. 2929.14(C)(4) to make certain findings.   Specifically, R.C.

2929.14(C)(4) allows for the imposition of consecutive sentences if the trial court finds that: (1) a "consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense; (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 29} At the sentencing hearing and in its termination entry, the trial court found that consecutive sentences were necessary to protect the public from future crime and to punish McElhaney, that consecutive sentences were not disproportionate to the seriousness of his conduct, and that he posed a danger to the public. Additional findings by the court tracked the language of R.C. 2929.14(C)(4)(b) and (c) and, as stated above, the court observed that McElhaney had acted recklessly and had an extensive criminal

record.

{¶ 30} The court imposed the following sentences, all to be served consecutively.

| Count | Offense | Degree | Disposition |
| --- | --- | --- | --- |
| I | Trafficking in Heroin | F5 | 12 months |
| II | Possession of Heroin | F5 | Merged with Count I |
| III | Agg. Trafficking in Drugs | F4 | 18 months |
| IV | Agg. Possession of Drugs | F5 | Merged with Count III |
| V | Trafficking in Heroin | F5 | 12 months |
| VI | Possession of Heroin | F5 | Merged with Count V |
| VII | Agg. Trafficking in Drugs | F3 | 30 months |
| VIII | Agg. Possession of Drugs | F3 | Merged with Count VII |
| IX | Trafficking in Drugs | F5 | 12 months |
| X | Possession of Drugs | M1 | Merged with Count IX |
| XII | Illegal Assembly or Possession of Drugs | F3 | 30 months |

{¶ 31} All of the sentences imposed were within the statutory range; the sentences for the fourth and fifth degree felonies were the maximum sentences allowed, but the sentences for the felonies of the third degree were not.

{¶ 32} The trial court made appropriate findings in support of the length and consecutive nature of the sentences it imposed. In light of McElhaney's extensive criminal record, the fact that he had previously been to prison, and the fact that he committed offenses while on community control, we cannot conclude that the record

clearly and convincingly did not support the trial court's imposition of the sentences that it imposed. Further, if we were to analyze this pursuant to the concurring opinion in *Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.), which would apply the abuse of discretion standard, we do not find an arguable assignment that the sentence constituted an abuse of discretion. We agree with appellate counsel that an assignment of error related to the sentencing in this case does not have arguable merit.

**{¶ 33}** Having conducted an independent review of the record in addition to McElhaney's potential assignments of error, we find no other arguably meritorious issues for appeal. Therefore, the judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Elizabeth A. Ellis
Kristin L. Arnold
Mark A. McElhaney
Hon. Stephen A. Wolaver