[Cite as *State v. Dillon*, 2020-Ohio-5031.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2020-CA-4 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2019-CR-357 |
| v. | : | |
| | : | (Criminal Appeal from |
| JUSTIN C. DILLON | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of October, 2020.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

MICHELLE M. MACIOROWSKI, Atty. Reg. No. 0067692, 7333 Paragon Road, Suite 170, Dayton, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} After a jury trial in the Greene County Court of Common Pleas, Justin C. Dillon was found guilty of theft, receiving stolen property, and forgery, all felonies of the fifth degree. After merging the theft and receiving stolen property offenses, the trial court imposed 11 months in prison each for the theft and the forgery, to be served consecutively for a total of 22 months in prison.

{¶ 2} Dillon appeals from his convictions, claiming that the State failed to prove venue beyond a reasonable doubt, that the trial court erred in denying his motion to dismiss on speedy trial grounds, and that the severity of the offenses did not warrant consecutive prison sentences. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} The State's evidence at trial established the following facts.

{¶ 4} Dillon is the step-son of Dr. Stephen Wheeler, who resides in Beavercreek, Greene County, Ohio. Dillon has been in Wheeler's life for approximately 20 years. Wheeler testified that Dillon had struggled with addiction for "as long as I've known him." In February 2019, Dillon had been living with his mother and step-father for four to six weeks. Wheeler believed that Dillon was "doing well" and had "[b]een relatively clean to the best of [Wheeler's] knowledge."

{¶ 5} At approximately 7:00 p.m. on February 11, 2019, Dillon asked Wheeler if he (Dillon) could use Wheeler's car for a few hours to go out with friends. Dillon told Wheeler that he would be home about 10:00 or 11:00 p.m. Wheeler gave Dillon permission. Wheeler's briefcase, which contained primarily personal and corporate

checks and files, was in Wheeler's car when Dillon borrowed it.

{¶ 6} Around 8:00 or 8:30 a.m. the next morning (February 12), Wheeler opened his garage door and saw that the car had not been returned. Wheeler contacted the Beavercreek Police Department and reported the car stolen.

{¶ 7} At approximately 9:20 a.m. the same day, Dillon attempted to cash one of Wheeler's personal checks (Check #1491) at the Fifth Third Bank branch on Elliot Drive in Middletown, Butler County, Ohio. The check, dated February 11, 2019, was made payable to Dillon in the amount of $230. The teller, Charity Jackson, did not think the signature on the check matched Wheeler's signature on file, and she consulted with Connie Lutes, the head teller. Lutes agreed that the signatures did not match, and she advised Jackson to call Wheeler, the individual who supposedly wrote the check. Wheeler told Jackson that he did not write the check and that he wanted the bank to contact the police. Wheeler reiterated at trial that Dillon did not have permission to have his checks, to fill out the checks, to sign Wheeler's name, or to cash the checks. Lutes told Jackson to go ahead and call the Middletown police.

{¶ 8} Dillon left the branch before the police arrived, leaving behind the check and his state identification card. Lutes and Jackson both testified that the identification card matched the person who presented the check. The Middletown police responded to the call, spoke with Jackson, and took the check and state ID as evidence.

{¶ 9} After speaking with the bank, Wheeler called the Beavercreek Police Department to report the stolen checkbook. Officer Francesco Trimboli responded to Wheeler's home and spoke with Wheeler and his wife. Afterward, the officer attempted to contact Dillon, but was unsuccessful.

{¶ 10} Trimboli then followed up by telephone with the Middletown Fifth Third Bank branch and spoke with Lutes and Jackson. Lutes and Jackson relayed what had occurred, and Officer Trimboli learned that Dillon's state identification card and the check had been left at the bank. The officer drove to Middletown and retrieved the items from the Middletown Police Department. The items later were logged into the Beavercreek Police Department's property room.

{¶ 11} Officer Trimboli also spoke with Kyle Forte, senior corporate investigator for Fifth Third Bank. After speaking with the officer, Forte accessed the digital video footage for the Elliot Drive branch in Middletown. Forte emailed Trimobli three snapshots taken from the bank's surveillance system, which showed Dillon's attempted transaction at the bank on February 12.

{¶ 12} Detective John Bondy of the Beavercreek Police Department was assigned the case for follow-up. Bondy attempted to contact Dillon, but he was unable to reach him. Bondy presented the matter to the county prosecutor and requested a warrant for Dillon's arrest.

{¶ 13} A few days after this incident, Dillon's mother contacted Dillon and told him that she and Wheeler needed the car back. Dillon and his mother arranged to meet. Wheeler drove his wife to a location in Middletown, and his wife got the car from Dillon. Dillon walked away, and Wheeler and his wife drove home. When Wheeler looked in his car, the contents of his briefcase had been dumped out in the back of the car.

{¶ 14} Dillon was arrested on May 26, 2019, and held at the Butler County Jail. He was relocated to the Greene County Jail on June 4, 2019.

{¶ 15} Detective Bondy spoke with Dillon on June 5, 2019. Dillon indicated that

he wanted to cooperate. Bondy testified that he "spelled out the facts, the complaint from [Dr.] Wheeler, and * * * basically why I was talking to him." Bondy had the snapshots from the surveillance video out where Dillon could see them. Dillon did not deny his involvement. Dillon acknowledged that the state ID was his and that the check was taken from Wheeler. Dillon told the detective that he had a crack cocaine addiction in February 2019 and that "nothing was safe" when he was using drugs. Dillon further said that he would argue jurisdiction as far as where the check was stolen from and was attempted to be cashed. On cross-examination, Detective Bondy stated that, "at the time," he also thought venue "might be an issue."

{¶ 16} On June 14, 2019, Dillon was indicted in Greene County for the theft of Check #1491 on February 11, for receiving stolen property (Check #1491) on February 12, and forgery (Check #1491) on February 12. Dillon posted bond on July 1 and was released from jail. However, Dillon failed to appear for his arraignment on July 12; as a result, the court revoked his bond and issued a capias for his arrest. Dillon remained at large until September 13, 2019, when he was arrested. Thereafter, Dillon remained incarcerated during the pendency of his case.

{¶ 17} The trial court set Dillon's trial date for November 4, 2019. On the scheduled trial date, the State moved for a continuance, stating that the prosecutor had had a death in the family and would be out of the office on November 4 and 5. The trial court granted the motion and rescheduled the trial for November 12, 2019. On November 8, the trial court issued an entry indicating that the November 4 trial date was being continued until November 12 so that an older case could proceed to trial and that the speedy trial time was waived until the start of the trial. Another older case went to

trial on November 12, and the court rescheduled Dillon's trial for November 18.

{¶ 18} On November 15, Dillon moved to dismiss the case, claiming that the State failed to commence trial within the statutory speedy trial time. Dillon calculated that more than 270 days had elapsed since his arrest (even excluding the time that he was at large), and that the last date for trial would be Monday, November 4, absent other tolling events. Dillon claimed that the continuances of his November 4 trial date were neither reasonable nor necessary. On November 18, the trial court again rescheduled Dillon's case so that an older case could proceed to trial; the court rescheduled Dillon's trial for December 2.

{¶ 19} On December 2, Dillon's case proceeded to a two-day jury trial, during which venue was the primary contested issue. The jury found Dillon guilty of all charges. During the trial but outside the presence of the jury, the court discussed Dillon's speedy trial motion with counsel. The court subsequently issued a written entry denying the motion.

{¶ 20} The court held a sentencing hearing on January 23, 2020. The State agreed that the theft and receiving stolen property offenses merged, and it elected to proceed on the theft offense. The court subsequently imposed 11 months each for the theft and forgery offenses and ordered them to be served consecutively. The court recommended Dillon for the Oasis program.

{¶ 21} Dillon appeals from his convictions, raising three assignments of error.

## II. Venue

{¶ 22} In his first assignment of error, Dillon claims that the State failed to establish venue in Greene County beyond a reasonable doubt.

{¶ 23} Pursuant to Article I, Section 10 of the Ohio Constitution and R.C. 2901.12,

"evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. "It is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *Id.* at ¶ 19, quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus. Circumstantial evidence may be used to establish venue. *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 33 (2d Dist.), citing *State v. May*, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 24 (8th Dist.).

{¶ 24} Ohio's venue statute provides that the trial of a criminal case "shall be held in a court having jurisdiction of the subject matter, and * * * in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). That statute further provides that "[w]hen the offense involved the unlawful taking or receiving of property * * *, the offender may be tried in any jurisdiction from which or into which the property * * * was taken [or] received * * *." R.C. 2901.12(C).

{¶ 25} R.C. 2901.12(G) addresses circumstances in which it cannot be determined exactly where an offense or element of an offense occurred. It provides: "When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions." *Id.*

{¶ 26} Finally, R.C. 2901.12(H) discusses venue where the offender has engaged in a course of criminal conduct. It states:

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.

* * *

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

* * *

R.C. 2901.12(H).

{¶ 27} In this case, Dillon was charged with theft and receiving stolen property arising from his taking of Check #1491 from his step-father. He was charged with forgery based on his uttering the forged check at the Fifth Third branch in Middletown. The State's evidence established that Wheeler's checkbook was in a briefcase in his car when Wheeler loaned the car to Dillon from his Beavercreek, Greene County, home on February 11. Dillon dumped the contents of the briefcase in the back seat area of the car and wrote a check from Wheeler's personal checkbook; the forged check was also dated February 11. The jury could have reasonably concluded that Dillon both took and received the stolen check in Greene County and, as a result, venue was appropriate in Greene County pursuant to R.C. 2901.12(C) and (G).

{¶ 28} The State's evidence established the Dillon uttered the forged check at a Middletown, Butler County, bank. However, the forgery offense occurred as part of Dillon's course of conduct, which included the theft of the check, as well as the unauthorized use of Wheeler's vehicle. As a result, pursuant to R.C. 2901.12(H)(1) and (3), venue was also properly in Greene County as to the forgery offense.

{¶ 29} Dillon's first assignment of error is overruled.

### III. Speedy Trial

{¶ 30} In his second assignment of error, Dillon claims that the trial court erred in denying his motion to dismiss on speedy trial grounds, which was filed on November 15, 2019, after the court continued his November 4, 2019 trial date. Dillon claimed that his speedy trial time expired on November 4 and that subsequent continuances of his jury trial were not reasonable or necessary.

{¶ 31} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. In Ohio, R.C. 2945.71 requires the State to bring a felony defendant to trial within 270 days of arrest. R.C. 2945.71(C). Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three pursuant to the triple-count provision of R.C. 2945.71(E).

{¶ 32} A defendant can establish a prima facie case for a speedy trial violation by demonstrating that the trial was held past the time limit set by statute for the crime with which the defendant is charged. *State v. Gray*, 2d Dist. Montgomery No. 20980, 2007-Ohio-4549, ¶ 15. "If the defendant can make this showing, the burden shifts to the State to establish that some exception[s] applied to toll the time and to make the trial timely. If

the State does not meet its burden, the defendant must be discharged. R.C. 2945.73." *Id.*

{¶ 33} The time within which a defendant must be brought to trial may be extended for the reasons specifically enumerated in R.C. 2945.72. *State v. Brewer*, 2d Dist. Montgomery Nos. 22159, 22160, 2008-Ohio-2715, ¶ 37, citing *State v. Palmer*, 84 Ohio St.3d 103, 702 N.E.2d 72 (1998). Permissible reasons for extending the trial date include "[a]ny period of delay necessitated by reason of a * * * motion * * * made or instituted by the accused" and "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" R.C. 2945.72(E) and (H). *See also, e.g., State v. McElhaney*, 2d Dist. Greene No. 2014-CA-9, 2015-Ohio-349, ¶ 8.

{¶ 34} The record reflects the following relevant timeline.

| Date(s) | Event | Days |
|---|---|---|
| May 26, 2019 | Day of arrest | N/A |
| May 27- June 3 | Held in Butler County Jail | 8 |
| June 4 – July 1 | Held in Greene County Jail | 27 |
| July 2 – July 12 | Out on bond | 11 |
| July 13 – Sept 13 | Defendant at large | N/A |
| Sept 14 – Nov 4 | Held in Greene County Jail | 52 |

| Nov 5 – Nov 12 | Continuance due to death in prosecutor's family + docket management | 8 |
|---|---|---|
| Nov 13 – Nov 18 | Continuance due to docket management | 6 |
| Nov 19 – Dec 2 | Continuance due to docket management | 14 |

{¶ 35} In his motion, Dillon counted all of the days that he was held in custody in Butler and Greene Counties until November 4 (87 days) under the three-for-one provision, for a total of 261 days for purposes of his speedy trial time. Dillon agreed that the 11 days that he was out on bond counted as single days and that the speedy trial time tolled while he absconded. Dillon thus claimed that his speedy trial time, as of November 4, was 272, which exceeded the time limited allowed under R.C. 2945.72.

{¶ 36} The trial court held a brief hearing on Dillon's motion on December 2. The prosecutor asserted that 30 of the 87 days should not have counted as 3-for-1, because Dillon was sentenced on October 7, 2019 to 30 days in jail in Greene County Juvenile Case No. C0046120-0A. The entry in the juvenile case indicated that Dillon had 28 days of jail time credit and, thus, he had two days to serve, which would commence immediately. To clarify, the court asked the prosecutor:

THE COURT: In the calculation of the 30 days that are the subject of the

Juvenile Court order, the Defense in their motion counted those 30 days by

triple count, in other words, it was 90 days toward the 270?

[PROSECUTOR]: Yes, sir.

THE COURT: And having heard that from the State, any disagreement with

that?

[DEFENSE COUNSEL]: No.

{¶ 37} Although the record does not reflect which dates were credited to Dillon as jail time credit for the juvenile case, defense counsel appeared to agree that Dillon served 30 days in jail for the juvenile court case during the pendency of this case.[1]   Accordingly, on November 4, 57 days should have been counted under the 3-for-1 provision and 41 days should have been counted as 1-for-1.   Thus, as of November 4, 2019, only 212 (171 + 41) days of the permissible 270 days had elapsed for speedy trial purposes.

{¶ 38} On November 4, i.e., before the speedy trial time had expired, the State filed a written motion requesting a continuance due to a death in the family of the prosecutor assigned to try the case.   The motion indicated that the prosecutor would be out of the office on November 4 and 5.   The same day, the trial court granted the continuance, stating that the basis for the continuance was the unexpected death in the prosecutor's family.   The death of the prosecutor's family member justified a reasonable continuance. *See State v. Smith*, 5th Dist. Holmes No. 17CA0017, 2018-Ohio-3175, ¶ 56; *State v. Beavogui*, 6th Dist. Wood No. WD-17-009, 2018-Ohio-2432, ¶ 34.   Here, the continuance until November 12 was reasonable.   Accordingly, Dillon's speedy trial time was tolled during this continuance.

{¶ 39} The trial court subsequently continued, sua sponte, the November 12 trial date until November 18 and the November 18 trial date until December 2, both times

---

[1] The State asserts that Dillon served this sentence from September 14 until October 13. Given that the juvenile court determined that Dillon was entitled to 28 days of jail time credit as of October 7, Dillon necessarily was incarcerated on the juvenile court case prior to September 14.   The entry further indicated that Dillon's remaining two days would be served immediately, and thus they would have been completed on October 9. Regardless, on this record, we need not determine the exact dates that Dillon was incarcerated on the juvenile case.

citing docket efficiency and the need for an older criminal case to proceed to trial. R.C. 2945.72(H) "contemplates continuances resulting from the court's docket pressures." *State v. Tillman*, 2d Dist. Clark No. 06CA0118, 2008-Ohio-2060, ¶ 17, citing *State v. Lee*, 48 Ohio St.2d 208, 357 N.E.2d 1095 (1976). Moreover, we find the length of the trial court's continuances to be reasonable, particularly given that those 20 days, had they not been tolled and instead counted under the 3-for-1 provision, would have extended the trial date to only two days beyond the speedy trial time limit.

{¶ 40} Dillon's second assignment of error is overruled.

### IV. Sentencing

{¶ 41} In his third assignment of error, Dillon claims that the severity of the two offenses did not warrant consecutive prison sentences.

{¶ 42} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 43} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial

court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 44} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses

of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 45} The trial court made the statutory findings, both orally and in its written judgment entry, when imposing consecutive sentences. As to the third prong, the court found that Dillon's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by Dillon. The court explained in its judgment entry:

> The defendant has failed to comply with the law and Court orders since 1997. Since 1997 the defendant has accumulated fourteen adult felony convictions, and has served seven prison sentences. The defendant has twenty[-]five theft[-]related convictions between Common Pleas Courts [ ] and Municipal Courts in the State of Ohio.

{¶ 46} In his appellate brief, Dillon argues that the trial court failed to appropriately consider his request and obvious need for drug treatment. At the sentencing hearing, defense counsel informed the trial court that Dillon had been screened by The Green Leaf Program, a residential drug and alcohol rehabilitation program, and "could potentially be accepted into that program." Counsel indicated that Dillon was willing to engage in drug treatment and that his drug addiction was a motivating factor in his offenses. Counsel acknowledged Dillon's "significant" criminal history, but requested community control with drug treatment rather than a prison sentence.

{¶ 47} Speaking on his own behalf, Dillon recognized that he had an "extensive"

criminal history and had been going to prison since he was 18 years old; he was 43 years old at sentencing. Dillon told the trial court that he had never been sentenced to a program and that it was his belief that "if you took away my drug addiction, you would take away a criminal history." Dillon expressed his need to do something different so that he could change. He said, "I don't have a 401(k) coming. I don't have a retirement coming. A lot of reality is hitting me in the face right now. * * * I have got 14 and a half years incarcerated, so I need to learn basically how to live, how do, how to do something different than what I have been doing."

{¶ 48} In imposing 11-month consecutive sentences, the trial court described Dillon as a "serial burglar," which it defined as "someone who cannot stop stealing from other people." The court found disappointing that Dillon stole from his own family. The court stated that it had no reason to disbelieve that Dillon's thefts were driven by addiction, but further told Dillon that his addiction would not be fixed unless he really wanted to fix it. The court noted Dillon's criminal history and concluded that a prison term was an appropriate sentence, but it indicated that it would recommend Dillon for the Oasis prison program, a program in which Dillon would need to ask to participate.

{¶ 49} Upon review of the record, the trial court was permitted to impose prison sentences because Dillon had previously served a prison term, and the 11-month (non-maximum) sentences were within the statutory range for a fifth-degree felony. The prison terms thus were not contrary to law.

{¶ 50} In addition, the presentence investigation report reflected that Dillon had more than three dozen of convictions since 1997, many of which involved theft-related offenses. Dillon had served several jail and prison sentences, and he had approximately

two dozen rule infractions while incarcerated. We also cannot conclude that the imposition of prison terms, rather than community control, was clearly and convincingly unsupported by the record.

{¶ 51} Dillon also asks that we modify his sentence to concurrent sentences. He states, in a conclusory fashion, that his "conduct and history did not warrant that his sentences be served consecutively." We recognize that the charges in this case stem from Dillon's theft of his step-father's checkbook and his forgery of a check in the amount of $230. While this conduct may not appear to be severe, we cannot conclude that the trial court's imposition of consecutive sentences was clearly and convincingly unsupported by the record.

{¶ 52} Dillon's third assignment of error is overruled.

## V. Conclusion

{¶ 53} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and HALL, J., concur.


Copies sent to:

Marcy A. Vonderwell
Michelle M. Maciorowski
Hon. Stephen Wolaver