[Cite as *State v. Suleymanov*, 2026-Ohio-2431.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30677 |
| Appellee | : | |
| | : | Trial Court Case No. 2025 CR 00699 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| RUSTAM A. SULEYMANOV | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 26, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

NICHOLAS D. GRAMAN, Attorney for Appellant
ANDREW T. FRENCH, Attorney for Appellee

EPLEY, J.

{¶ 1} Rustam A. Suleymanov was convicted after a jury trial in the Montgomery County Court of Common Pleas of involuntary manslaughter and grand theft of a motor vehicle. The trial court imposed consecutive sentences totaling 12.5 to 18 years in prison. Suleymanov appeals from his convictions, claiming that (1) his convictions were based on insufficient evidence and against the manifest weight of the evidence, and (2) the imposition of consecutive sentences based on his criminal history is clearly and convincingly unsupported by the record. For the following reasons, the trial court's judgment is affirmed.

**I. Facts and Procedural History**

{¶ 2} According to the State's evidence at trial, at approximately 10:25 p.m. on August 24, 2024, Suleymanov walked alone through the parking lot of the Royal Banquet and Events Center at 4475 Old Troy Pike in Dayton and joined, apparently uninvited, a wedding reception occurring there. Suleymanov remained for an hour, during which time he obtained food from the buffet line. He ate and drank wine at a table by himself in the dining room. V.A., a wedding guest, was seated behind Suleymanov at another table. At some point, Suleymanov took the keys to V.A.'s black Nissan Pathfinder.

{¶ 3} At 11:19 p.m., Suleymanov exited the building by himself. He located V.A.'s Pathfinder in the parking lot with the key fob, sat in the vehicle for a couple of minutes, and then drove off, heading southbound on Old Troy Pike. At that time, V.A. was unaware that

either her car keys or her car had been taken. She had not given her keys to anyone, nor had she given anyone permission to drive her vehicle.

{¶ 4} Suleymanov sped down Old Troy Pike, a two-lane road, into the city of Riverside. Approximately one and a half miles from the banquet center, Suleymanov veered off the right side of the road, overcorrected, lost control, and crossed the center line into the northbound lane. The driver's side of the front of the Pathfinder struck the driver's side of a Chevrolet sedan driven by Michael Jumper, causing catastrophic damage to both vehicles. The Pathfinder ended up sideways on Old Troy Pike, and the Chevy came to rest among the trees and honeysuckle bushes in front of the residence at 3140 Old Troy Pike. Jumper sustained multiple fatal injuries.

{¶ 5} Nearby residents heard a "horrific boom" and called 911 to report the crash. Emergency personnel arrived quickly and found Suleymanov with serious injuries in the driver's seat of the Pathfinder; he was the sole occupant. Suleymanov was transported by medics to Miami Valley Hospital. Jumper was deceased in his vehicle.

{¶ 6} After determining the ownership of the Pathfinder, a Riverside police officer contacted V.A., who then discovered that her car and car keys were missing. V.A. filed a theft report with a Dayton police officer who met her at the banquet center.

{¶ 7} Riverside officers requested assistance from the Ohio State Highway Patrol to conduct the accident investigation. Among others, Trooper (now Sergeant) Austin Kleman, a crash reconstructionist, and Trooper Marcello Anverse responded to the scene. Based on data from the vehicles and his own calculations, Kleman determined that when the vehicles collided, Jumper's Chevy was traveling approximately 39 mph and the Pathfinder was driving between 60 and 70 mph. Three seconds before the crash, Suleymanov had been going 99 mph. The speed limit on Old Troy Pike was 40 mph.

**{¶ 8}** Initially, law enforcement officers were unable to identify the driver of the Pathfinder. As part of the investigation, Trooper Anverse drove to the hospital to speak with Suleymanov, and he was able to ascertain Suleymanov's identity. Anverse later obtained surveillance videos from the banquet center, which showed Suleymanov's movements at the venue. The OSHP requested Suleymanov's driving records from the BMV; the records showed that Suleymanov's driver's license had been suspended since March 2020.

**{¶ 9}** On April 8, 2025, Suleymanov was indicted on aggravated vehicular homicide (suspension), involuntary manslaughter (proximate result of grand theft of a motor vehicle), and grand theft of a motor vehicle. He pled not guilty to the charges. The matter ultimately proceeded to a jury trial, during which the State presented numerous witnesses and exhibits. Suleymanov offered no evidence in his defense. The jury found him guilty of all charges. The trial court ordered a presentence investigation, and the State filed a sentencing memorandum.

**{¶ 10}** At sentencing on October 31, 2025, the trial court merged involuntary manslaughter with aggravated vehicular homicide, and the State elected to proceed on the manslaughter charge. After hearing from Suleymanov and a member of Jumper's family (defense counsel and the prosecutor declined to make statements), the court sentenced Suleymanov to an indefinite term of 11 to 16½ years in prison for involuntary manslaughter and a definite term of 18 months for grand theft of a motor vehicle to be served consecutively. The court ordered Suleymanov to pay restitution to V.A. and to a representative for Jumper, plus court costs.

**{¶ 11}** Suleymanov appeals from his convictions, raising two assignments of error.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 12} In his first assignment of error, Suleymanov claims that his convictions for involuntary manslaughter and grand theft of a motor vehicle were based on insufficient evidence and were against the manifest weight of the evidence. He argues that the State's evidence did not support his conviction for grand theft, and because that offense was the predicate offense for involuntary manslaughter, both convictions must be vacated.

{¶ 13} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 1997-Ohio-52, ¶ 23. The relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 1997-Ohio-372, ¶ 51. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id*.

{¶ 14} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A

judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 15} Suleymanov was convicted of involuntarily manslaughter in violation of R.C. 2903.04(A), which states, "No person shall cause the death of another . . . as a proximate result of the offender's committing or attempting to commit a felony." A violation of R.C. 2903.04(A) is a felony of the first degree. R.C. 2903.04(C). In this case, the predicate offense was grand theft of a motor vehicle, a felony of the fourth degree. R.C. 2913.02(A)(1) and (5). R.C. 2913.02(A)(1) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [w]ithout the consent of the owner or person authorized to give consent."

{¶ 16} On appeal, Suleymanov asserts that the State failed to prove that he lacked V.A.'s consent to operate the Pathfinder. He emphasizes that (1) V.A. never denied knowing him or willingly giving him the keys to her car, (2) there was no video evidence of him stealing her car keys, and (3) V.A. could not remember whether she had consumed alcohol at the reception which, he claims, affected her credibility. Suleymanov does not contest that he caused Jumper's death, nor does he challenge whether the State proved proximate cause.

{¶ 17} At trial, V.A. testified that, on August 24, 2024, she attended a friend's wedding, and the reception was held at a banquet center She parked her black Nissan Pathfinder in the banquet center's parking lot. Later that night, V.A. received a phone call from a Riverside police officer, asking her if she had her car. Believing that her car was in the parking lot, V.A. insisted that she did. After some back and forth with the officer, V.A. thought the phone call was a prank, and she hung up. Afterward, V.A. went outside to check on her car and discovered it was not there. Now convinced that the call had been genuine,

6

she called back the officer's number and waited for a Dayton police officer to respond to the banquet center.

{¶ 18} V.A. also looked for her car keys and saw that they too were missing. Although V.A. was not sure whether she had left her keys in her purse or on the table next to it at the reception, she was "100 percent" certain that she had the keys with her and had not left them in her vehicle. Officers found a purse in V.A.'s vehicle at the crash scene, but she explained that it was her "work purse," which she leaves in the car. V.A. had a different purse, plus another bag, at the reception, as substantiated by Dayton Police Officer Eli Moreland's body camera video.

{¶ 19} V.A. identified herself in a video taken at the banquet center and her vehicle in a photograph of the scene of the fatal crash. V.A. stated that she had not left her vehicle at the crash location. When asked if she had given anyone permission to drive her vehicle that evening, she replied, "No." She further testified that when she parked her car, she did not tell anyone that they could borrow it, nor did she give her keys to anyone. Officer Moreland, who responded to the banquet center, testified that he took a stolen vehicle report from her. V.A.'s testimony, if believed, was sufficient to prove that she had not given Suleymanov consent to drive her vehicle.

{¶ 20} Surveillance video from the banquet center further supported the conclusion that Suleymanov had stolen V.A.'s vehicle. Suleymanov's movements at the banquet center suggested that he was a wedding crasher, not an invited guest, and that he had no association with any of the individuals there. Although there was no testimony about whether Suleymanov knew V.A., the videos suggested that he did not, and it would be irrelevant if he did. Suleymanov emphasizes that no video showed him taking V.A.'s keys, but one surveillance video of the dining room was damaged and could not be played. Trooper

Anverse testified that he had received the video in that condition. Video footage recorded later that evening showed Suleymanov in the parking lot apparently using the Pathfinder's fob to locate it. The State's evidence thus supported a reasonable inference that Suleymanov took V.A.'s keys during that brief gap in video coverage.

{¶ 21} Finally, Suleymanov asserts that V.A.'s credibility was questionable because she may have consumed alcohol at the wedding reception. It was the province of the jury, as the trier of fact, to assess the witnesses' credibility and determine whether the State had proven beyond a reasonable doubt that Suleymanov committed the charged offenses. In reaching its verdict, the jury was free to believe all, part, or none of the witnesses' testimony. *State v. Peterson*, 2021-Ohio-3947, ¶ 27 (2d Dist.). We cannot conclude that the jury lost its way when it ostensibly credited V.A.'s testimony.

{¶ 22} Suleymanov's convictions for grand theft of a motor vehicle and involuntary manslaughter (proximate result of grand theft) were based on sufficient evidence and were not against the manifest weight of the evidence. Accordingly, his first assignment of error is overruled.

### III. Consecutive Sentences

{¶ 23} In his second assignment of error, Suleymanov claims that the trial court erred in imposing consecutive sentences because his history of criminal conduct did not support consecutive sentencing.

{¶ 24} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 9. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) the

record does not support certain specified findings or (2) the sentence imposed is contrary to law. *State v. King*, 2024-Ohio-5347, ¶ 11 (2d Dist.)

**{¶ 25}** It is generally presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 2014-Ohio-3177, ¶ 16, 23. However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. *State v. Dillon*, 2020-Ohio-5031, ¶ 44 (2d Dist.).

**{¶ 26}** R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 27} "The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to the trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5. "Our authority is limited to detecting *something* in the record that supported the trial court's findings. As long as the findings were not clearly and convincingly unsupported, we must affirm." (Emphasis in original.) *State v. Simpson*, 2024-Ohio-2378, ¶ 36 (2d Dist.).

{¶ 28} According to the PSI, Suleymanov came to the United States in 2005, when he was approximately 30 years old. He first resided in Connecticut, where he had two convictions for driving under the influence (OVI), one in 2011 and the other in 2013. Suleymanov also had additional misdemeanor convictions in Connecticut for criminal mischief (2012 and 2013) and breach of peace (2014). Suleymanov violated his probation in four of those cases and served jail sentences multiple times.

{¶ 29} Suleymanov has incurred 12 traffic convictions in Ohio. In addition, he has been convicted of three Ohio misdemeanors: assault, willful or wanton disregard (amended from OVI), and criminal trespass. In recent years, he has also been convicted of two felonies: possession of cocaine and improper handling of a firearm in a motor vehicle. Suleymanov exhibited an unwillingness to comply with community control sanctions, including by repeatedly refusing to participate in substance abuse assessments and treatment, despite continuing to test positive for alcohol and methamphetamine. Although Suleymanov was not charged with OVI regarding the fatal collision here, the trial court noted that he had a blood alcohol concentration of .142 when his blood was tested at the hospital.

{¶ 30} Suleymanov emphasizes that he has no history of violence or serious felonies, but he provides no support for his contention that a precedent of violence or serious felonies

is required. Suleymanov has a history of substance abuse and numerous traffic offenses, including OVIs. Suleymanov's conduct in this case, which included driving at dangerous speeds on a dark two-lane road, was consistent with his prior behavior. His most recent unrelated offenses were felonies, not misdemeanors, and he has repeatedly demonstrated an unwillingness to comply with conditions of community control, including in those felony cases. The trial court's imposition of consecutive sentences based on Suleymanov's criminal history are not clearly and convincingly unsupported by the record.

**{¶ 31}** Suleymanov's second assignment of error is overruled.

### IV. Conclusion

**{¶ 32}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.