[Cite as *State v. Fader*, 2024-Ohio-4921.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-1 |
| | : | |
| v. | : | Trial Court Case No. 23-CRB-001-0418 |
| | : | |
| RICK T. FADER | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 11, 2024

. . . . . . . . . . .

RICHARD L. KAPLAN, Attorney for Appellant

CHANCE O. COX, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Rick T. Fader appeals from his conviction in the Darke County Municipal Court after a jury found him guilty of voyeurism. For the reasons that follow, the judgment of the trial court will be reversed, and the case will be remanded for

further proceedings.

I.      **Facts and Procedural History**

{¶ 2}   B.F. and his longtime girlfriend, B.C., bought a house on East Main Street in Greenville in June 2023. They wanted a television installed on the wall in the master bedroom and asked Fader (who had worked as a handyman) to install an electrical outlet and a wall mount for the television. The plan was for the outlet to be hidden by the television so the wires were not visible. On July 1, while neither B.F. nor B.C. was home, Fader installed the outlet. A few days later, this time when B.F. was home, Fader returned to do the wall mount and the television. The outlet and television were facing the bed and were about 5½ feet up on the wall. Once the television was installed, however, it was discovered that the outlet was several inches below the bottom edge of the screen.

{¶ 3} On July 8, 2023, while he was inspecting the outlet's built-in USB ports, B.F. discovered a tiny camera built into a hole in the center of outlet. He testified that he "freaked out a little bit," went to his brother's house to cool down, and then came back home to take the outlet out of the wall. Once removed, he noticed the outlet had a circuit board on the back; further investigation revealed a secure digital (SD) memory card.

{¶ 4} B.F. removed the SD card from the outlet and inserted it into his computer. The card contained no videos but many, many photos. The camera appeared to be taking pictures every 5 to 10 seconds, which were sorted into folders by date. B.F. was particularly concerned about pictures from July 6, a day he and B.C. had sex, but the folder from that date was missing.

{¶ 5} On July 9, B.F. took the outlet and SD card to Greenville police detective

Dale Dickman. Detective Dickman used department resources to examine the SD card. He found hundreds of images from the bedroom; they were time-stamped and in files by date. Among the hundreds were "private" ones, showing a naked female and the naked buttocks of a male.

{¶ 6} Based on the ensuing investigation, Fader was charged by criminal complaint with voyeurism, in violation of R.C. 2907.08(B), a second-degree misdemeanor. The case proceeded to a jury trial on January 19, 2024. The jury heard testimony from B.F., B.C., Detective Dickman, and Kerry Smoot, the chief investigator for the Montgomery County Prosecutor's Office, who helped analyze the outlet, SD card, and pictures.

{¶ 7} After deliberations, the jury found Fader guilty. He was sentenced to a jail term of 89 days and classified as a Tier I sex offender. He has filed a timely appeal that raises four assignments of error.

## II.     Jury Instructions

{¶ 8} In his first assignment of error, Fader argues that the trial court's failure to instruct the jury on the definition of "reasonable doubt" was reversible error and was a violation of the Fifth and Sixth Amendments to the United States Constitution.

{¶ 9} What the factfinder must determine to reach a guilty verdict is prescribed by the Due Process Clause. *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993). The prosecution bears the burden of proving all elements of the offense charged, *see, e.g., Patterson v. New York,* 432 U.S. 197, 210 (1977); *Leland v. Oregon,* 343 U.S. 790, 795 (1952), and it must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each element. *See In re Winship,* 397 U.S. 358, 364 (1970); *Cool*

*v. United States,* 409 U.S. 100, 104 (1972). "In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." *Sullivan* at 278. This is true federally and in Ohio.

{¶ 10} R.C. 2901.05(A) states that "[e]very person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution." That a person is innocent until proven guilty beyond a reasonable doubt is fundamental and a well-known phrase in our vernacular.   The meaning of "reasonable doubt" is much less understood, however, which is why the statute demands it be defined for the jury.

{¶ 11} R.C. 2901.05(C) requires that, as part of its charge to the jury in a criminal case, "the court *shall* read the definitions of 'reasonable doubt' and 'proof beyond a reasonable doubt[.]' " (Emphasis added.) The terms are defined as:

> "Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

R.C. 2901.05(E).

{¶ 12} At the conclusion of testimony, the trial court gave the jury its instructions.

It explained the elements of the crime of voyeurism and, as pertinent to this case, the court noted that "Rick Fader must be presumed innocent until his guilt is proven beyond a reasonable doubt." Trial Tr. at 259. It further told the jury that Fader "must be acquitted or found not guilty unless the prosecution produces evidence that convinces you beyond a reasonable doubt of every essential element of the offense charged." *Id.* Although the court mentioned the concept of "reasonable doubt," it failed to explain what the term actually means.

**{¶ 13}** Fader argues that not explaining the definition of "reasonable doubt" to the jury was structural error, necessitating reversal. Structural errors "affect the very framework of the trial, permeating the conduct of the trial from beginning to end, to the point that the trial cannot be a reliable means of determining guilt or innocence." *State v. Miller*, 2009-Ohio-4607, ¶ 16 (2d Dist.). Structural error analysis is for "constitutional deprivations" rather than an error in the trial process itself. *State v. Lazzerini*, 2021-Ohio-1998, ¶ 16 (5th Dist.). If the State can demonstrate "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," then the error is harmless, and the defendant is not entitled to reversal. *Weaver v. Massachusetts,* 582 U.S. 286, 294 (2017).

**{¶ 14}** There are some errors, however, that should not be deemed harmless beyond a reasonable doubt. Among the very limited number of errors the United States Supreme Court has recognized as structural are a biased judge, complete denial of counsel, denial of self-representation at trial, the denial of a public trial, and similar to this case, conviction upon a defective reasonable doubt instruction. *See Weaver* at 295-296;

*State v. Perry*, 2004-Ohio-297, ¶ 18.

{¶ 15} The State, on the other hand, contends that because Fader's trial counsel did not object to the deficient jury instructions, he has forfeited all but plain error. Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 16} After considering both arguments and the related caselaw, we conclude that not defining "reasonable doubt" and "beyond a reasonable doubt" for the jury was an error that warrants reversal under either structural error or plain error analysis. Even though the terms "reasonable doubt" and "beyond a reasonable doubt" are quite common, they require a definition. Without the statutory definition – or any definition at all – each juror could hold to different levels of proof, and that could harm both the accused and the State. One juror could believe "reasonable doubt" is a 51/49 proposition, an approach that would negatively impact the defendant, while another could expect the State to prove guilt beyond "any doubt." Both extremes are fundamentally unfair and legally incorrect. *See Weaver* at 296 (if a judge fails to give a reasonable doubt instruction, the resulting trial is always fundamentally unfair); *Sullivan,* 508 U.S. at 281; *State v. Montgomery*, 2022-Ohio-2211, ¶ 29.

{¶ 17} We conclude that the failure to define "reasonable doubt" and "beyond a reasonable doubt" as required by R.C. 2901.05(C) is reversable error. Fader's first

assignment of error is sustained. Because his conviction must be reversed, it is unnecessary to address his other assignments of error.

### III.   Conclusion

**{¶ 18}** The judgment of the trial court will be reversed, and the case will be remanded for further proceedings, including a new trial should the State choose to proceed in that fashion.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.