**[Cite as *State v. Smith*, 2025-Ohio-2086.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30201 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 00535 |
| | : | |
| CARL LAMONT SMITH | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 13, 2025

. . . . . . . . . . .

JOHNNA M. SHIA, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Carl Lamont Smith appeals from his convictions for aggravated vehicular homicide, aggravated vehicular assault, and operating a vehicle while under the influence. For the reasons set forth below, we affirm.

## I. Factual and Procedural Background

{¶ 2} This appeal arises from a motor vehicle collision that occurred on January 1, 2023, on Germantown Pike in Montgomery County, Ohio. At approximately 7:00 p.m., David Watson heard a loud crash. Upon exiting his front door, Watson observed a portion of a heavily damaged Chevy Suburban in his yard. He also observed that the front passenger section of the Suburban was in Germantown Pike's northbound lane of travel. Watson located three boys in the Suburban, all of whom had suffered minor injuries, and led them to his front porch. After first responders arrived on the scene, it was discovered that the adult driver of the Suburban and two juvenile passengers were dead. Two other juvenile passengers were determined to have sustained serious injuries and were immediately transported to a local hospital. One of the injured juveniles had sustained a traumatic brain injury which left her permanently disabled.

{¶ 3} The other vehicle involved in the crash, a Chevy Traverse, was located off the road with its rear passenger wheel still in Germantown Pike's southbound lane. The driver of the Traverse, later identified as Smith, was trapped inside the vehicle. After he was removed from the vehicle, he was transported to the hospital for treatment of his injuries.

{¶ 4} Following an investigation, Smith was indicted on three counts of aggravated vehicular homicide (driving under suspension) in violation of R.C. 2903.06(A)(1), two counts of aggravated vehicular assault (suspension) in violation of R.C. 2903.08(A)(1), one count of operating a vehicle while under the influence (prior felony – whole blood)

(OVI) in violation of R.C. 4511.19(A)(1)(f)/(G)(1)(e), one count of operating a motor vehicle while under the influence (.238 or more urine/prior felony) in violation of R.C. 4511.19(A)(1)(i)/(G)(1)(e), and one count of operating a vehicle while under the influence (prior felony) in violation of R.C. 4511.19(A)(1)(a)/(G)(1)(e).

{¶ 5} A jury trial commenced on June 10, 2024. The State presented the testimony of several witnesses at trial. Montgomery County Sherriff's Deputy Bradley Gulley of the forensic services/traffic services unit had been assigned to investigate the collision. He testified that he had arrived on the scene of the crash before the debris was cleared. Gulley observed that most of the debris from the collision, including one tire from each vehicle, was in the northbound lane. When the tires were removed from the roadway, Gulley was able to observe a gouge mark in the road. According to Gulley, when cars collide head-on, the rear ends of the vehicles lift upward while the front ends move downward and leave a gouge mark in the pavement; in head-on collisions, gouge marks indicate the location where two vehicles collided. Based upon the location of the gouge mark, Gulley opined that Smith's vehicle had crossed the center line into the Suburban's lane of travel, causing the collision. Gulley also testified that a partially consumed bottle of rum and an empty beer can had been recovered from Smith's vehicle.

{¶ 6} The State presented testimony that the airbag module from Smith's vehicle had been retrieved and had captured approximately five seconds of information prior to the collision. The module data indicated that, five seconds prior to the collision, Smith was travelling 62 miles per hour. At approximately one second prior to the crash, the speed dropped to 61 miles per hour. The module data indicated that Smith's foot never

left the gas pedal, and the vehicle's brakes were not engaged.

{¶ 7} Brandon Abney, a firefighter/paramedic with the Miami Valley Fire District, helped remove Smith from his vehicle. Abney testified that he rode in the back of an ambulance with Smith during transport to the hospital. According to Abney, Smith stated that he "did have a lot to drink today." Miami Valley Fire District firefighter/paramedic inspector David Martin also testified that Smith initially stated that he had had "a lot to drink" that day. Martin further testified that Smith later stated that he had only consumed two beers.

{¶ 8} Montgomery County Sheriff's Deputy Benjamin Hale testified about speaking with Smith in the emergency department. According to Hale, Smith's speech was slightly slurred, and he had an odor of alcohol about him. Brian Simons, a forensic toxicologist with the Montgomery County Regional Crime Laboratory and the Montgomery County Coroner's Office, testified that Smith's blood testified positive for ketamine. Simons also testified that Smith's blood alcohol content was .290, and his urine test for alcohol returned a positive result of .391.

{¶ 9} Smith did not testify or present any witnesses at trial.

{¶ 10} The jury found Smith guilty on all counts. The trial court merged the three counts of OVI into Count One, sentenced Smith on each count, and ordered the offenses to be served consecutively. The aggregate prison term was 64 to 71.5 years.

{¶ 11} Smith appeals.

## II.    Sufficiency and Manifest Weight of the Evidence

{¶ 12} Smith's first assignment of error states:

THE STATE'S EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND THE MANIFEST WEIGHT OF THE EVIDENCE DOES NOT SUPPORT THE JURY'S VERDICTS.

{¶ 13} Smith claims the State failed to present evidence sufficient to support his convictions and that his convictions were against the manifest weight of the evidence.

{¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 15} However, when an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in

which the evidence weighs heavily against the conviction.' " *Id.*

{¶ 16} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). *Accord State v. Winbush*, 2017-Ohio-696 ¶ 58 (2d Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2022-Ohio-1421, ¶ 50 (2d Dist.).

{¶ 17} Smith was convicted of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1) and aggravated vehicular assault in violation of R.C. 2903.08(A)(1). Under these statutes, the State was required to prove that Smith had caused the death of another, or caused serious physical harm to another, as the proximate result of committing any OVI offense as defined by R.C. 4511.19(A).

{¶ 18} Smith first argues the State failed to present sufficient evidence that he committed an OVI offense. Specifically, he claims the State did not prove he was driving while "under the influence" because there was no proof that he was actually impaired by alcohol at the time of the collision. He notes that R.C. 4511.19(A)(1)(a), which prohibits driving while "under the influence of alcohol" requires some proof of actual impairment. *See State v. Naylor*, 2024-Ohio-1648, ¶ 45 (11th Dist.) ("Driving 'under the influence' [under R.C. 4511.19(A)(1)(a)] encompasses the concept of 'impaired' driving [making] a defendant's behavior a primary consideration.").

{¶ 19} However, under both R.C. 2903.06 and R.C. 2903.08, violation of any

section of R.C. 4511.19(A) may serve as the predicate offense for aggravated vehicular homicide and aggravated vehicular assault. Significantly, alternate sections of R.C. 4511.19(A) do not require proof of actual impairment. Rather, the State need only prove that the offender's alcohol concentration exceeds certain levels. As stated by the Ohio Supreme Court in *City of Defiance v. Kretz*, 60 Ohio St.3d 1 (1991):

> [T]he General Assembly [has] defined the point at which an individual can no longer drive without being a substantial danger to himself and others. In determining whether the defendant committed the per se offense, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant's chemical test reading was at the prescribed level and that the defendant operated a vehicle within the state.

(Citations omitted.) *Id.* at 3.

{¶ 20} Here, the State presented unrebutted competent, credible evidence that Smith had "a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood" and that he had "a concentration of two hundred thirty-eight-thousandths of one gram or more by weight of alcohol per one hundred milliliters of the person's urine." *See* R.C. 4511.19(A)(1)(f) and (i). This evidence was sufficient to prove a violation of R.C. 4511.19(A).

{¶ 21} Smith next argues that the act of driving under suspension, which he does not contest, was not sufficient to support the aggravated vehicular homicide and aggravated vehicular assault convictions. In support, he cites *State v. Moore*, 2019-

Ohio-3705 (6th Dist.), wherein the defendant was charged with involuntary manslaughter in violation of R.C. 2903.04(B). *Id.* at ¶ 4. That statute prohibits causing the death of another "as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor . . . ." The predicate offense for the manslaughter charge in that case was driving under a suspended driver's license in violation of R.C. 4510.16(A) and (D)(1). *Id.* at ¶ 40. In reviewing the defendant's sufficiency of the evidence argument, the appeals court held, "when a defendant's unlawful act is driving under suspension . . . [that act] cannot constitute the basis for an involuntary manslaughter conviction when there is no causative connection between the criminal act and the death of another." *Id.* at ¶ 43.

{¶ 22} Unlike the situation in *Moore*, driving under a suspended license is not an element of or predicate offense for the crimes of aggravated vehicular homicide/assault. Instead, proof that Smith was driving under a suspended license at the time of committing those offenses served merely to enhance the degree of the offenses. Aggravated vehicular homicide is elevated to a first-degree felony and aggravated vehicular assault is elevated to a second-degree felony if the offender was driving under a suspension at the time he committed those offenses. *See* R.C. 2903.06(B)(2)(B) and R.C. 2903.08(B)(1)(a). In other words, the act of driving under a suspension becomes relevant only after the State has already presented evidence sufficient to sustain convictions for aggravated vehicular homicide/assault.

{¶ 23} Finally, Smith argues that the deaths and injuries suffered by the victims were not caused by his driving. Instead, he claims there were other proximate causes

which served to negate his culpability.

{¶ 24} First, Smith claims that the yellow lane-dividing lines on Germantown Pike were not clear because remnants of a prior yellow center line remained visible after the roadway had been widened and the line repainted. Smith notes that the gouge mark observed by Deputy Gulley was "very close to the 'artifact' line suggesting that the Suburban was very close the center line." Thus, he argues, "[i]t is possible that under these circumstances, Smith could have believed that the artifact was the center line, and if the Suburban caused the gouge mark, Smith would not have necessarily been left of center."

{¶ 25} The record indicates that the roadway had been widened and that a new center line had been painted on it. The older center line, which was rendered off-center by the widening of the road, had not been completely removed. However, the old line had degraded and was not visible in some areas. The photographs presented into evidence showed that the detached vehicle tires overlaying the gouge mark were clearly on the northbound side of both the new line and the artifact line. Thus, regardless of whether Smith believed the "artifact" line was the center line, the area of impact noted by Gulley was on the northbound side of both lines. Thus, we conclude this argument has no factual merit.

{¶ 26} Next, Smith contends that neither the deaths nor the injuries would have occurred had the victims worn their seatbelts.

{¶ 27} "It is well established that the definition of 'cause' in criminal cases is identical to the definition of 'proximate cause' in civil cases. . . .The general rule is that

a defendant's conduct is the proximate cause of injury or death to another if the defendant's conduct (1) is a 'substantial factor' in bringing about the harm and (2) there is no other rule of law relieving the defendant of liability."  *State v. Flanek*, 1993 WL 335601, *8 (8th Dist. Sept. 2, 1993).  *Accord State v. Carter*, 2007-Ohio-5570, ¶ 25 (2d Dist.).  "A defendant cannot escape criminal liability merely because factors other than his actions contributed to the death or injury to the victims, unless the other factors were the sole proximate cause."  *State v. Ward*, 2001 WL 220244, *3 (2d Dist. Mar. 2, 2001), citing *Flanek* at *7.  "Indeed, . . . the alleged contributory negligence of a victim may not be used as a defense in a subsequent aggravated vehicular homicide prosecution unless it is the sole proximate cause of death."  *Flanek* at *7; *Carter* at ¶ 27

{¶ 28} Smith's argument is similar to that made by the defendant in *State v. Mitchell*, 67 Ohio App.3d 123 (3d Dist. 1990).  In *Mitchell*, the defendant was charged with aggravated vehicular homicide.  *Id.* at 124. The defendant attempted to introduce evidence that the decedent had not been wearing a seatbelt, claiming that such evidence was pertinent to the issue of whether the defendant's actions had caused the decedent's death.  *Id.* at 125.

{¶ 29} On appeal, the court affirmed the trial court's decision to exclude such evidence, concluding that whether the decedent had been wearing a seatbelt was not relevant in a prosecution for aggravated vehicular homicide.  The court wrote:

> Defendant makes a tenuous claim as to a distinction existing between a
> defendant causing the death of another (in the words of the statute), and a
> defendant's conduct being the proximate cause of the death of another. He

would have us believe that evidence of the lack of a seat belt was admissible to show the cause of the death of the passenger, divorcing such cause from any conduct of the defendant. However, the statute makes it a crime for the defendant to "recklessly cause the death of another." This crime is complete when the defendant, while operating a motor vehicle, sets in motion with the required state of mind the chain of conduct and events resulting in the death of another. The operator's culpability is determined when death occurs. He may "luck out" if death is prevented by the fact that a potential victim is wearing a seat belt, but he is nonetheless culpable because death occurs when the decedent had not been wearing a seat belt. Thus, when death has occurred, seat belt evidence has nothing to do with whether each of the statutory elements of the crime have been proved by other evidence. Accordingly, it is our opinion that . . . such evidence was not relevant to the proof of the elements of the alleged crime and was not admissible in any event.

*Id.* at 126-127.

**{¶ 30}** Here, Smith asks us to ignore his conduct and to focus on his claim that the deaths and injuries would not have occurred had the victims been wearing their seatbelts. This argument lacks merit. The record contains evidence, as outlined above, that Deputy Gulley, an accident reconstruction expert, determined that Smith had crossed the center line and caused the collision. There was also sufficient evidence to show that he was driving with a prohibited blood alcohol level. Without Smith's initial conduct, the

collision would not have occurred, and the resulting injuries and deaths would not have occurred.

{¶ 31} We conclude the record contains sufficient evidence that Smith committed the offenses of OVI, aggravated vehicular homicide, and aggravated vehicular assault. We further conclude that the convictions are not against the manifest weight of the evidence. Accordingly, the first assignment of error is overruled.

### III.    Motion in Limine

{¶ 32} Smith's second assignment of error provides:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SUSTAINED THE STATE'S MOTION IN LIMINE CONCERNING THE VICTIM'S TOXICOLOGY RESULTS.

{¶ 33} Smith contends the trial court erred by preventing him from introducing evidence regarding the toxicology report on the driver of the other vehicle (the Suburban). He argues that the driver's "alcohol level may have affected his ability to drive, which is entirely relevant to the" issue of causation.

{¶ 34} Prior to trial, the State filed a motion in limine seeking to exclude any evidence regarding the toxicology report generated as part of the autopsy of the driver of the Suburban. In the motion, the State claimed the toxicology report "indicated positivity for ethanol and marijuana metabolites." The trial court sustained the motion prior to empaneling the jury. During the trial court's on-the-record ruling on the motion, defense counsel objected to the ruling and stated that he had subpoenaed the toxicologist who

generated the report. Counsel stated that the evidence at trial could "open the door" for the admission of the toxicology report. The court agreed. However, defense counsel did not attempt to call the toxicologist to testify at trial or proffer the toxicology report or the nature of the testimony relevant to it.

{¶ 35} "[A] motion in limine, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted. Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty ". . . to consider the admissibility of the disputed evidence in its actual context." *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986), citing *State v. White*, 6 Ohio App.3d 1, 4 (8th Dist. 1982). The Ohio Supreme Court in *Grubb* further stated:

> The effect of the granting of a motion in limine in favor of the state in a criminal proceeding is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion. At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal. In the case at bar, appellant failed to make any such proffer and therefore we conclude, consistent with Evid.R. 103, that he waived his right to object to the evidentiary issue on appeal.

(Citation and footnote omitted.) *Id.* at 203.

{¶ 36} As stated, Smith never sought to introduce the toxicology report during trial and failed to proffer the results contained therein. Thus, we are constrained to conclude there is no final evidentiary ruling regarding the admissibility of the report for us to review. The second assignment of error is overruled.

### IV.     Expert Witness Testimony

{¶ 37} The third assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED

DEP. GULLEY TO TESTIFY AS AN EXPERT WITNESS IN ACCIDENT

RECONSTRUCTION.

{¶ 38} Smith contends the trial court should not have permitted the State to present Deputy Gulley as an expert on the subject of accident reconstruction.

{¶ 39} A trial court has broad discretion to determine the admissibility of expert testimony, and its decision will not be reversed absent an abuse of that discretion. *State v. Pulaski*, 2003-Ohio-4847, ¶ 18 (2d Dist.), citing *State v. Jones*, 90 Ohio St.3d 403, 414 (2000); *Lucsik v. Kosdrosky*, 2017-Ohio-96, ¶ 16 (8th Dist.). The qualification of an expert witness is governed by Evid.R. 702, which permits a witness to testify as an expert when the following conditions are met:

(A) The witness' testimony either relates to matters beyond the knowledge

or experience possessed by lay persons or dispels a misconception

common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill,

experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶ 40}** Smith does not dispute Gulley's training, education, or certification in accident reconstruction. Instead, his argument is that, "[a]lthough Deputy Gulley had completed 400 hours of educations and certifications to reconstruct an accident, he had never done so in his six years at the Sheriff's office before this case."

**{¶ 41}** The record demonstrates that Gulley has been a law enforcement officer since 2010 and began working for the Montgomery County Sheriff's Department in 2020; he completed over 400 hours of education and training before receiving his certification as an accident reconstructionist in February 2022.

**{¶ 42}** We first note that, despite Smith's stated argument, Gulley had been

employed as a Sheriff's Deputy for approximately three years prior to being appointed as lead investigator in this case. Further, he became certified in accident reconstruction approximately one year prior to this case. In other words, there is no support for Smith's implied claim that some unspecified problem prevented Gulley from acting as a lead investigator for six years after his certification. Nonetheless, we previously addressed a similar objection to an expert's competence to testify in *State v. Thomas*, 2003-Ohio-5746 (2d Dist.), wherein we stated:

> The fact that Robinson had not previously testified as an expert does not disqualify her as an expert witness. All expert witnesses presumably have a first time testifying as an expert. If a witness cannot qualify as an expert without prior experience testifying as an expert, there can never be expert witnesses. "[A]s with any expert witness, that witness must at some point in time be qualified for the first time as an expert in a certain field. The fact that the witness may have limited opportunities to testify before a court of law does not limit his knowledge of the subject in any manner." *State v. Moulder*, 2002–Ohio–5327, ¶ 65 (8th Dist.).

*Id.* at ¶ 27.

{¶ 43} In short, the fact that this was the first time Gulley testified as an expert witness was not a basis to disqualify him as an expert witness.

{¶ 44} Smith also contests Gulley's expertise because Gulley admitted that he had not considered certain factors such as the weight, length, and height of the vehicles involved in the collision. Smith also faults Gulley for failing to determine the speed of

either vehicle in preparing his report.

{¶ 45} We first note that the State produced evidence that Smith's Traverse was traveling 61 miles per hour at the point of impact. Likewise, evidence was introduced that the driver of the Suburban could not have reached a speed of more than 60 miles per hour at the time of the crash. Further, while Gulley indicated that the factors cited by Smith may, generally, be relevant to a crash investigation, he testified that he had considered all the factors he deemed relevant to and determinative of the cause of this specific collision. Smith did not present any expert evidence to indicate Gulley's investigation was deficient or that the above-cited factors must be considered in every crash investigation.

{¶ 46} Finally, although not stated in his assignment of error, Smith claims "the trial court abused its discretion when it permitted Deputy Evers to also testify as an expert reconstructionist for the State, thereby bolstering the credibility of Deputy Gulley and other deputy's lay testimony concerning the same."

{¶ 47} We begin by noting that Smith did not object to the trial court's decision to permit Evers to testify as an expert. Therefore, we are constrained to conduct a plain error review. Plain error requires the existence of an obvious error and a reasonable probability that it affected the outcome of the proceeding. *State v. Hess*, 2023-Ohio-3658, ¶ 11 (2d Dist.).

{¶ 48} Smith does not contest Ever's competence as an expert in accident reconstruction. The record demonstrates that Evers had the requisite education, training, and certification to qualify him as such an expert. To the extent that this

argument can be read as an objection to cumulative expert testimony, we find no merit in that argument. The main purpose of Evers's testimony was to establish that he had conducted acceleration/speed tests from the stop sign at Soldier's Home Road to the site of the accident to determine how fast the adult victim had been driving at the time of the crash. Therefore, his testimony provided evidence that was not merely cumulative to Gulley's testimony. On this record, we find no error, let alone plain error, in permitting Evers to testify as an expert.

**{¶ 49}** The third assignment of error is overruled.

### V.     Cumulative Error

**{¶ 50}** Smith's fourth assignment of error states:

SMITH WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL DUE

TO THE CUMULATIVE EFFECT OF ERRORS BY THE TRIAL COURT.

**{¶ 51}** Smith contends that the trial court committed multiple errors during trial and that the cumulative effect of those errors resulted in the denial of a fair trial.

**{¶ 52}** Under the doctrine of cumulative error, "[s]eparately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. . . . In order to find cumulative error, we first must find that multiple errors were committed at trial." *State v. Harris*, 2004-Ohio-3570, ¶ 40 (2d Dist.). "A conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 2012-Ohio-2577, ¶ 223, citing *State v. DeMarco*, 31

Ohio St.3d 191 (1987), paragraph two of the syllabus. The doctrine is inapplicable unless there are "multiple instances of harmless error." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

{¶ 53} Having found no errors in the record before us, we cannot find cumulative error. Accordingly, the fourth assignment of error is overruled.

## VI.    Maximum Sentences

{¶ 54} The fifth assignment of error asserted by Smith is as follows:

THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S MAXIMUM SENTENCE BY CLEAR AND CONVINCING EVIDENCE AND IS, THEREFORE, CONTRARY TO LAW.

{¶ 55} Smith argues that the imposition of the maximum sentences for aggravated vehicular homicide, aggravated vehicular assault, and OVI was not supported by the record.

{¶ 56} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 1, 21. As provided in that statute, an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that the record does not support the sentencing court's findings as required by certain sentencing statutes not applicable to this assignment of error, or the sentence is "otherwise contrary to law."

{¶ 57} "A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense,

and the court considers the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12." *State v. Seith*, 2016-Ohio-8302, ¶ 12 (8th Dist.), citing *State v. Keith*, 2016-Ohio-5234, ¶ 10, 16 (8th Dist.).

**{¶ 58}** Smith does not claim that the sentences imposed fall outside the statutory ranges provided for each offense. Further, the record affirmatively demonstrates that the trial court considered both the principles and purposes of felony sentencing as well as the relevant seriousness and recidivism factors. Specifically, the court's sentencing entry states that the court considered "all required factors of the law" in imposing its sentence and found that "prison is consistent with the purpose of R.C. 2929.11." The sentencing hearing transcript also reflects that the trial court considered the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors of 2929.12 before sentencing Smith to maximum terms. Accordingly, the trial court's imposition of maximum sentences was not contrary to law.

**{¶ 59}** However, Smith argues that a review of the seriousness and recidivism factors set forth in R.C. 2929.12 establishes that the imposition of the maximum sentences was clearly and convincingly not supported by the record. But reviewing and weighing those factors exceeds the permissible scope of our appellate review, as R.C. 2953.08(G)(2)(b) does not permit a reviewing court to vacate or modify a sentence "based upon its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 39.

**{¶ 60}** Because the trial court examined the record and concluded that maximum

sentences were consistent with the purposes of felony sentencing and were appropriate in view of the statutory seriousness and recidivism factors, *Jones* precludes us from independently weighing the evidence and substituting our judgment for that of the trial court. Accordingly, the sixth assignment of error is overruled.

## VII. Consecutive Sentences

{¶ 61} Smith's sixth assignment of error provides:

WHETHER THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE IN THE RECORD.

{¶ 62} Smith contends the trial court erred by imposing consecutive sentences.

{¶ 63} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 2014-Ohio-3177, ¶ 16, 23. However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. *State v. Dillon*, 2020-Ohio-5031, ¶ 44 (2d Dist.).

{¶ 64} R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the

offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 65}** When reviewing the imposition of consecutive sentences, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to the trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record."  *State v. Gwynne*, 2023-Ohio-3851, ¶ 5. *See also State v. Norris*, 2023-Ohio-4057, ¶ 13 (2d Dist.) (an appellate court cannot reverse consecutive sentences unless it clearly and convincingly finds the record does not support the trial court's findings).

**{¶ 66}** There is no dispute that the trial court made the required findings for imposing consecutive sentences.  However, Smith contests the trial court's R.C. 2929.14(C)(4)(b) finding.  Specifically, he argues the "multiple offenses [of which he was convicted] amount to a single act and were not so great or unusual that the trial court

could not have met the purposes and principles of sentencing with a single prison term."

**{¶ 67}** We disagree. The deaths and serious injuries to multiple victims supported the trial court's conclusion that the harm caused by Smith's conduct was so great that a single prison term was not adequate to reflect the seriousness of his conduct. Moreover, the record supported the trial court's finding that Smith's criminal history demonstrated that consecutive sentences were necessary to protect the public from future crime.

**{¶ 68}** The trial court had the benefit of a presentence investigation report which showed that Smith had an extensive criminal history. The report showed a juvenile adjudication for offenses that, had he been an adult, would have constituted the crimes of criminal damaging and felony unauthorized use of a vehicle. Further, between 2007 and 2021, Smith was convicted of 11 misdemeanor offenses, including three convictions for operating a vehicle under the influence. Additionally, he was convicted of a felony OVI offense in December 2021.

**{¶ 69}** The record also reflects that Smith was on community control sanctions at the time of the instant offense, as he had been placed on five years of community control sanctions for the 2021 conviction. As part of those sanctions, he was placed on an SL2 alcohol monitor, and his license was suspended. In June 2022, Smith absconded after cutting and removing the alcohol monitor. He was not located until he was involved in the instant offense.

**{¶ 70}** Given this record, we cannot say that the court's findings were clearly and convincingly not supported by the record. Smith's sixth assignment of error is overruled.

## VIII.   Conclusion

{¶ 71} All of Smith's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .


LEWIS, J. and HANSEMAN, J., concur.