[Cite as *State v. Sharpe*, 2026-Ohio-1215.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-1 |
| Appellee | : | |
| | : | Trial Court Case No. 24-CR-042 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JEFFREY ROSCOE SHARPE | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on April 3, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

JEFFREY ROSCOE SHARPE, Appellant, Pro Se
JOHN M. LINTZ, Attorney for Appellee

TUCKER, J.

{¶ 1} Jeffrey Roscoe Sharpe appeals pro se from his convictions on one count of cocaine possession, one count of having a weapon while under disability, and two counts of improper handling of a firearm in a motor vehicle.

{¶ 2} Sharpe contends the trial court erred in overruling a motion to dismiss the charges on speedy trial grounds, failing to grant a mistrial following the State's references to an indictment in another case, overruling his motion for a new trial, and failing to merge the three firearm-related offenses as allied offenses of similar import. He also challenges the legal sufficiency and manifest weight of the evidence to sustain his convictions and alleges that he received ineffective assistance of trial counsel.

{¶ 3} For the reasons set forth below, we find Sharpe's assignments of error to be without merit. Accordingly, we affirm the trial court's judgment.

## I. Background

{¶ 4} A grand jury indicted Sharpe on one count of cocaine possession, one count of aggravated drug possession (methamphetamine), two counts of having a weapon while under disability, and two counts of improper handling of a firearm in a motor vehicle. The charges stemmed from a traffic stop for a marked-lane violation. During the stop, Sharpe exited his vehicle and allegedly discarded a handgun and a baggie of cocaine. A subsequent search of his car resulted in the discovery of methamphetamine tablets.

{¶ 5} The case proceeded to a jury trial in November 2024. At the close of testimony, the trial court dismissed one count of having a weapon while under disability, finding no basis for the alleged disability because Sharpe had not yet been indicted in another case at the time of the traffic stop. The jury acquitted him of aggravated drug possession based on the methamphetamine tablets found in his car, and it found him guilty on all other charges. The trial court imposed an aggregate 54-month prison sentence, and Sharpe's appeal followed. Sharpe dismissed his appointed appellate counsel, electing to proceed pro se. He advances seven assignments of error.

## II. Analysis

{¶ 6} The first assignment of error states:

The trial court erred by overruling Sharpe's motion to dismiss regarding his right to [a] fast & speedy trial.

{¶ 7} Sharpe asserts that he was not tried until 418 days after his arrest. He argues that this delay was beyond the time allowed by Ohio's speedy trial statute. Therefore, he claims the trial court erred in overruling his pretrial motion to dismiss the charges against him on speedy trial grounds.

{¶ 8} Upon review, we find Sharpe's argument to be unpersuasive. The State argues that various tolling events occurred, extending the time within which it was required to try him. The State also correctly points out that his motion lacked merit regardless of tolling. Effective April 4, 2023, which was before the events underlying Sharpe's case, "the Ohio legislature amended R.C. 2945.73, changing the consequence of a failure to bring a felony defendant to trial within the 270-day speedy trial period." *State v. Jennings*, 2025-Ohio-5548, ¶ 28 (2d Dist.). "Prior to the amendment, R.C. 2945.73(B) provided: 'Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged

3

if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code.' The discharge was a bar to any further criminal proceedings based on the same conduct." *Id.*, citing former R.C. 2945.73(D).

{¶ 9} Notably, "R.C. 2945.73 now provides that a felony defendant who is not brought to trial within the statutory speedy trial timeframe is eligible for release from detention pending trial (as opposed to discharge)." *Id.* at ¶ 29, citing R.C. 2945.73(C)(1). "If the expiration of speedy trial time was timely raised by motion, the defendant must be tried within 14 days after the motion was filed and served on the prosecutor." *Id.*, citing R.C. 2945.73(C)(2). "If no motion was filed, the defendant must be brought to trial within 14 days after the trial court determines that the statutory speedy trial time limit has expired." *Id.* "The charges must be dismissed with prejudice only if the case is not tried within the 14-day grace period," which "may be extended at the defendant's request or due to the fault or misconduct of the defendant." *Id.*

{¶ 10} Sharpe pled not guilty, demanded a jury trial, and invoked his right to a speedy trial two days after his January 23, 2024 indictment. He did not move for dismissal on speedy trial grounds, however, until November 20, 2024, just minutes before commencement of his jury trial. Even assuming, arguendo, that speedy trial time expired during the pendency of his case, R.C. 2945.73 gave the State 14 days to try him after he raised the issue on November 20, 2024. His trial commenced that same day, which plainly was within the 14-day grace period. Therefore, we see no possible speedy trial violation.

{¶ 11} Although Sharpe's reply brief disagrees with our application of R.C. 2945.73, we find the 14-day grace period applicable based on this court's analysis in *Jennings* quoted above. We also are unpersuaded by his claim that the grace period did not apply because the trial court did not mention it. The grace period is part of Ohio's speedy trial statute, and

4

it applied by operation of law regardless of whether the trial court cited it. Accordingly, the first assignment of error is overruled.

{¶ 12} The second assignment of error states:

The trial court erred by not declaring a mistrial sua sponte, resulting in plain error.

{¶ 13} Sharpe contends the trial court should have declared a mistrial sua sponte after the jury heard about him being under indictment for drug offenses in another case. He argues that the failure to declare a mistrial constituted structural error or plain error.

{¶ 14} Sharpe's argument involves count one of his indictment, which charged him with having a weapon while under disability. Count one alleged two predicate disabilities, his indictment in a prior drug case (23CR725) and his conviction in another drug case (05CR783). Prior to trial, defense counsel discovered that the drug conviction in case no. 05CR783 had been reversed on appeal. As a result, the trial court precluded any reference to that conviction. It found that count one survived, however, based on the second alleged predicate disability, namely that Sharpe had been under indictment for a drug offense in case no. 23CR725. The State proceeded to introduce evidence of that indictment at trial.

{¶ 15} Following the State's case in chief, the trial court reviewed a copy of the indictment in case no. 23CR725, State's Exhibit 14, and realized that it had been returned approximately one month after the events in this case. This meant that at the time of the traffic stop in the above-captioned case, Sharpe was not under disability as alleged in count one. The trial court responded by dismissing count one based on legally insufficient evidence.

{¶ 16} Sharpe asserts that the trial court also should have declared a mistrial sua sponte. He notes that the State referred to the indictment in case no. 23CR725 at least five

5

times before the jury and a copy of the indictment was admitted into evidence and never withdrawn. Finally, he contends the prosecutor improperly referred to the indictment underlying count one during closing arguments even though the trial court had dismissed count one. Sharpe argues that the references to the indictment in case no. 23CR725, along with the admission of the indictment as an exhibit, constituted structural error entitling him to a mistrial. Alternatively, he argues that the trial court committed plain error by not declaring a mistrial after allowing the jury to hear about the indictment in case no. 23CR725 without providing any curative instruction.

{¶ 17} Upon review, we see neither structural error nor plain error arising from the foregoing issue. "Structural errors 'affect the very framework of the trial, permeating the conduct of the trial from beginning to end, to the point that the trial cannot be a reliable means of determining guilt or innocence.'" *State v. Fader*, 2024-Ohio-4921, ¶ 13 (2d Dist.), quoting *State v. Miller*, 2009-Ohio-4607, ¶ 16 (2d Dist.). "Structural error analysis is for 'constitutional deprivations' rather than an error in the trial process itself." *Id*., quoting *State v. Lazzerini*, 2021-Ohio-1998, ¶ 16 (5th Dist.).

{¶ 18} The State charged Sharpe with having a weapon while under disability based on a predicate disability, an indictment in case no. 23CR725, that did not exist when he possessed the weapon. After the State presented evidence of the indictment, the trial court became aware of its non-existence at the time of the traffic stop. As a result, the trial court correctly dismissed count one based on the State's presentation of legally insufficient evidence to sustain a conviction.

{¶ 19} We are unpersuaded, however, that the State's introduction of evidence about the indictment rose to the level of constitutional error permeating the framework and conduct of the trial from beginning to end. Rather, the State's introduction of evidence about an

6

indictment that did not exist at the relevant time was error in the trial process itself. Therefore, we find plain error review, rather than structural error analysis, to be appropriate.

{¶ 20} "Plain error requires the existence of an obvious error and a reasonable probability that it affected the outcome of the proceeding." *State v. Smith*, 2025-Ohio-2086, ¶ 47 (2d Dist.). Here the State's introduction of evidence about an irrelevant indictment was unlikely to have affected the outcome of Sharpe's trial. The trial court properly dismissed the count at issue. The jury also acquitted him on a charge of aggravated drug possession involving methamphetamine tablets found in his car. Although this fact is not dispositive, it suggests that the jury was not unfairly prejudiced against him by hearing about the indictment. The jury hearing about Sharpe having a weapon while under disability also was not inherently prejudicial because the charges against him included a second count of having a weapon while under disability based on a prior conviction. Finally, we note that after the trial court dismissed count one, the State's sole reference to the irrelevant indictment was a statement to the jury in closing arguments that the prosecution "will not be presenting that charge to you." Under these circumstances, we find no plain error. The second assignment of error is overruled.

{¶ 21} The third assignment of error states:

The trial court erred when it overruled Sharpe's Motion for a New Trial without

a hearing.

{¶ 22} Sharpe contends the trial court erred in overruling his motion for a new trial without first holding an evidentiary hearing.

{¶ 23} Sharpe filed a new trial motion after the jury's verdict and prior to sentencing. A memorandum in support alleged that a male juror repeatedly had stared at him during trial. Sharpe stated that he thought the juror looked familiar during trial. After the trial

7

concluded, Sharpe recounted that the juror had made advances toward two of Sharpe's former girlfriends at area bars a few years earlier. Sharpe recalled that he and the juror had "exchanged words about the situation." Sharpe noted that the juror in question had served as the foreman. Sharpe theorized that the juror purposely had failed to disclose his past history and had abused his position as foreman to settle a "score" with Sharpe.

**{¶ 24}** Sharpe asked the trial court to set aside the jury's verdicts and to order a new trial under R.C. 2945.79 based on an irregularity in the proceedings of the jury, misconduct of the jury, and accident or surprise. The trial court addressed the motion at the outset of his sentencing hearing and asked whether defense counsel wished to be heard. Defense counsel declined and rested on the motion itself. The trial court then overruled the motion with the following explanation:

> The Court, other than Mr. Sharpe's belief after the trial concluded that he knows this juror, there's absolutely no evidence before the Court that Mr. Sharpe, in fact, knew the juror, which doesn't preclude him from being a juror. There was no evidence or no allegations that the juror intentionally did not disclose his, perhaps, knowledge of the Defendant; and there is no evidence whatsoever that the juror did anything to taint the remaining 11 jurors who all found not only Mr. Sharpe guilty of three counts, they found him not guilty of a count and also found him not guilty of a forfeiture specification. So the Court cannot find that this in any way was an irregularity in the jury trial that we had in this matter.

December 19, 2024 Tr. 5.

**{¶ 25}** On appeal, Sharpe argues only that "[t]he court should have, at the very least, held a hearing to determine if the juror lied during voir dire and had a personal animus

8

against" him. Whether to hold an oral evidentiary hearing on a new trial motion is within a trial court's discretion. *State v. Bostick*, 2025-Ohio-5559, ¶ 19 (involving a Crim.R. 33(A) motion for a new trial based on newly discovered evidence). Here Sharpe's motion was not accompanied by any affidavits or other documentary evidence requiring a credibility assessment, and the motion itself did not request an oral hearing. Nor did defense counsel request to be heard when the trial court raised the issue prior to sentencing. "One would be hard-pressed to conclude that a trial court abused its discretion when it declined to hold an oral hearing that was never requested." *Id*. at ¶ 20. We see no abuse of discretion here. The third assignment of error is overruled.

{¶ 26} The fourth assignment of error states:

The State presented insufficient evidence to support Sharpe's conviction on

count 4 (possession of cocaine).

{¶ 27} Sharpe challenges the legal sufficiency of the evidence to sustain his conviction for possession of cocaine. He claims the State presented no evidence that he possessed cocaine. He asserts that the State relied on lab reports to establish that the substance at issue was cocaine. He argues that a highway patrol sergeant improperly provided hearsay testimony about the lab results and that the lack of testimony from a lab analyst who prepared the reports violated his constitutional right to confrontation.

{¶ 28} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

9

essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 29} Sharpe's legal-sufficiency challenge lacks merit for at least two reasons. First, pursuant to R.C. 2925.51(A), a lab report itself constitutes prima facie evidence of the content, identity, and weight of a substance when certain statutory requirements are met. The lab report here, State's Exhibit 20, met those requirements, which included a notarized statement from the signer and notice of the accused's right to demand testimony from the signer. Under R.C. 2925.51(C), the signing lab technician's testimony is not required unless a defendant timely demands it. The record reveals no demand in Sharpe's case.

{¶ 30} As for the confrontation issue, "[t]he Confrontation Clause of the Sixth Amendment to the United States Constitution prohibits the admission of an out-of-court statement of a witness who does not appear at trial if the statement is testimonial, unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness." (Citations omitted.) *Kettering v. Maston*, 2018-Ohio-1948, ¶ 26 (2d Dist.). "A laboratory report stating that forensic analysis has identified a sample as a particular substance is a testimonial statement." (Citations omitted.) *Id*.

{¶ 31} In *Smith v. Arizona*, 602 U.S. 779, 802-803 (2024), the U.S. Supreme Court recognized that the Confrontation Clause prohibits the prosecution from introducing "the testimonial out-of-court statements of a forensic analyst at trial, unless she is unavailable and the defendant has had a prior chance to cross-examine her." The Confrontation Clause also prohibits the prosecution from introducing "those statements through a surrogate analyst who did not participate in their creation." *Id*. at 803. Finally, *Smith* held that the Confrontation Clause prohibits a witness from relying on an absent analyst's findings as the basis for the witness's own "independent opinion" about the quantity and identify of a drug.

10

*Id*. at 790-791, 803. "Approving that practice would . . . allow for easy evasion of the Confrontation Clause." *Id*. at 798. It would mean that "every testimonial lab report could come into evidence through any trained surrogate, however remote from the case. And no defendant would have a right to cross-examine the testing analyst about what she did and how she did it and whether her results should be trusted." *Id*. at 799.

{¶ 32} In the present case, *Smith* would preclude the highway patrol sergeant from forming his own independent opinion, based on the non-testifying analyst's lab report, that the substance found behind the tree was cocaine. But *Smith* did not prevent the State from introducing the lab report itself as prima facie evidence of the weight and identity of the cocaine. The State's reliance on the report raised a potential Confrontation Clause issue, but nothing in *Smith* precludes a defendant from waving his right to confrontation. Here Sharpe's failure to demand testimony from the signer of the lab report, as permitted by R.C. 2925.51(C), did waive his Sixth Amendment confrontation right. *State v. Pasqualone*, 2009-Ohio-315, ¶ 43. We note too that the procedure outlined in R.C. 2925.51 itself does not violate the Sixth Amendment. *State v. Hartman*, 2016-Ohio-2883, ¶ 83 (2d Dist.) (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), for the proposition that "state statutes, such as R.C. 2925.51, do not run afoul of the confrontation clause when the effect of the statute is only to establish the procedural timing of when the [confrontation] right must be exercised").

{¶ 33} Second, assuming purely arguendo that it was error to establish the existence of cocaine through the sergeant's reference to a lab report, reversal based on legally insufficient evidence still would be improper. When "reviewing challenges based on the sufficiency of the evidence, we are required to consider all of the evidence admitted at trial, regardless of whether it was admitted erroneously." *State v. Easterling*, 2019-Ohio-2470,

11

¶ 32 (2d Dist.). Here the sergeant's testimony and the lab report were admitted into evidence, and they were legally sufficient to prove that the substance at issue was cocaine.

**{¶ 34}** In a final argument, Sharpe challenges the legal sufficiency of the evidence to sustain his conviction for improper handling of a firearm in a motor vehicle based on transporting a weapon while under the influence of alcohol. He contends the record lacks evidence that he was under the influence of alcohol at the time of the traffic stop. He asserts that no drug or alcohol tests were performed. He also cites his own statement that he was not intoxicated. On cross-examination, however, Sharpe acknowledged that he had pleaded guilty to operating a vehicle while under the influence of alcohol in connection with the incident. Additionally, a highway patrol sergeant and a trooper testified about Sharpe appearing to be under the influence of alcohol and admitting to consuming alcoholic beverages. For these reasons, we find the State presented legally sufficient evidence to sustain his conviction. The fourth assignment of error is overruled.

**{¶ 35}** The fifth assignment of error states:

Sharpe's convictions are against the manifest weight of the evidence.

**{¶ 36}** Sharpe argues that each of his convictions is against the manifest weight of the evidence because the State "presented no evidence to connect [him] to the gun or drugs." He contends the weight of the evidence fails to support a finding that he disposed of cocaine and a firearm outside of his car without being seen.

**{¶ 37}** When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 38} Sharpe's convictions are not against the weight of the evidence. His only argument is that the State failed to link him to cocaine and a firearm found outside but near his car after the traffic stop. At trial, a highway patrol sergeant testified that he initiated the stop for a marked-lane violation in the early morning hours of September 29, 2023. Sharpe responded by turning down an unknown person's long driveway. He stopped near the end of the driveway, exited his car, and began walking away. As he did so, he kicked something under the front bumper of his car. He then walked around a large tree and threw his hands in the air. After Sharpe's arrest, a highway patrol trooper found a loaded, operable firearm under the front end of Sharpe's car and a baggie of cocaine behind the tree where Sharpe had thrown up his hands. The highway patrol sergeant testified that Sharpe's passenger, who fled the scene, had not gone where the firearm and cocaine were located. Sharpe himself admitted that his passenger had not yet even exited the car when Sharpe kicked something under the front end.

{¶ 39} Based on the evidence presented, the jury reasonably could have found that Sharpe dropped a handgun in front of his car and kicked it to conceal it. He then discarded the baggie of cocaine behind a tree when he threw his hands in the air. The evidence does not weigh heavily against these conclusions, and the jury did not clearly lose its way or create a miscarriage of justice. Accordingly, the fifth assignment of error is overruled.

{¶ 40} The sixth assignment of error states:

The trial court erred when it failed to merge Sharpe's convictions for counts 2,

5 and 6 for sentencing.

{¶ 41} Sharpe contends that the trial court erred in failing to merge for sentencing his convictions on one count of having a weapon while under disability and two counts of improper handling of a firearm in a motor vehicle. He argues that the three crimes were allied offenses of similar import.

{¶ 42} "[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff*, 2015-Ohio-995, ¶ 31. In considering these questions, we are limited to plain-error review because Sharpe did not raise the allied-offense issue below. Once again, we note that "[p]lain error requires the existence of an obvious error and a reasonable probability that it affected the outcome of the proceeding." *Smith*, 2025-Ohio-2086, at ¶ 47 (2d Dist.).

{¶ 43} We conclude that Sharpe's convictions of having a weapon while under disability and improper handling of a firearm in a motor vehicle were not subject to merger. Sharpe engaged in separate acts with separate intent when he possessed a firearm in a motor vehicle and when he exited the vehicle carrying the firearm to the front of his car. *See State v. Clark*, 2016-Ohio-1560, ¶ 9 (2d Dist.) ("Given that Clark was found guilty of the improper-handling offense, the jury must have concluded that he had the handgun while in the vehicle. That constituted the improper-handling offense. Thereafter, Clark also had

14

possession of the weapon, under the disability, while he fled outside of the vehicle. This separate act and intent constituted the weapon-under-disability offense.").

{¶ 44} Whether the two improper-handling offenses were subject to merger is a more difficult issue. The State incorrectly argues that the trial court crafted a "de facto merger" of these offenses when it imposed concurrent sentences for them. But "[t]he imposition of concurrent sentences is not the equivalent of merging allied offenses." *State v. Damron*, 2011-Ohio-2268, ¶ 17. Therefore, we must conduct a proper allied-offense analysis.

{¶ 45} The jury found Sharpe guilty of violating R.C. 2923.16(B), which provides that "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." The jury also found him guilty of violating R.C. 2923.16(D)(1), which provides that "[n]o person shall knowingly transport or have a loaded handgun in a motor vehicle if, at the time of that transportation or possession . . . [t]he person is under the influence of alcohol."

{¶ 46} Division (B) of the statute criminalizes having any loaded firearm readily accessible without leaving a vehicle. Division (D)(1) criminalizes having a loaded handgun anywhere in a vehicle, regardless of whether it is accessible without leaving the vehicle, while under the influence of alcohol. Sharpe simultaneously violated both provisions when he transported a loaded handgun in the passenger compartment of his car while under the influence of alcohol. We see no basis for finding that the two offenses involved separate conduct or that they were committed with a separate animus or motivation.

{¶ 47} The only real question is whether the two offenses were of dissimilar import or significance. "[T]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate

victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 26.

**{¶ 48}** Sharpe's two improper-handling offenses did not have separate victims. As for separate harms, the harm from his offense of improperly handling a firearm in a motor vehicle while under the influence of alcohol was the risk of "causing harm to himself, others, or property with a firearm while inside a motor vehicle." *State v. Pope*, 2017-Ohio-1308, ¶ 34 (2d Dist.). This risk does not appear to have differed in kind from the risk created by his simultaneous act of transporting a readily accessible, loaded firearm in a motor vehicle.

**{¶ 49}** In other words, it strikes us that the harm resulting from Sharpe's violation of division (B) and division (D)(1) was the same—namely a risk of causing harm to person or property with a loaded firearm inside his vehicle. The focus of the risk under division (B) was the accessibility of a loaded firearm in the passenger compartment of his car, whereas the focus of the risk under subsection (D)(1) was his being under the influence of alcohol. Under both provisions, however, one reasonably could infer that the identical harm sought to be prevented was Sharpe's potential use of a firearm inside his car. *Compare State v. Crossley*, 2020-Ohio-6639, ¶ 21 (2d Dist.) (finding the same resulting harm for carrying a concealed weapon and improper handling of a firearm in a motor vehicle, namely the risk involved in having "a readily accessible firearm that could be used to harm others").

**{¶ 50}** Nevertheless, we recognize that "[t]he second element of the plain-error test requires the error to be obvious." *State v. Bailey*, 2022-Ohio-4407, ¶ 14. Moreover, Sharpe bears the burden of showing plain error. *Id*. at ¶ 8. His appellate brief contains none of the foregoing analysis. Without even mentioning the applicability of plain-error review, his entire substantive argument is as follows: "When applying the *Ruff* review, the answer is 'no' to each of the questions. The offenses were not dissimilar in import or significance. The

16

offenses were not committed separately. The offenses were not committed with separate animus or motivation." Appellant's Br., p. 16. These conclusory claims do nothing to establish the existence of an obvious error.

{¶ 51} In *Bailey*, the Ohio Supreme Court recognized that an error may not be obvious or "plain" even where the underlying facts are undisputed. The issue in *Bailey* was whether kidnapping and rape were allied offenses of similar import. Even if the trial court had erred in failing to merge the two offenses, the Ohio Supreme Court held, on undisputed facts, that the error was not obvious. *Bailey* at ¶ 14. We reach the same conclusion. Particularly considering Sharpe's failure to advance any substantive argument, he has not established plain error in the trial court's failure to merge his two counts of improper handling of a firearm in a motor vehicle. Whether the harm resulting from each offense was separate and identifiable is not obvious. The answer requires considering potentially fine distinctions between the type and degree of risk associated with having an accessible, loaded firearm in the passenger compartment of a car and transporting a handgun in a car while under the influence of alcohol. We see no obvious error in the trial court's failure to engage in this analysis sua sponte or failure to merge the two counts as allied offenses. The sixth assignment of error is overruled.

{¶ 52} The seventh assignment of error states:

Appellant received ineffective assistance of trial counsel, which deprived him

of a fair trial, in violation of the sixth amendment of the United States

Constitution.

{¶ 53} Sharpe's final assignment of error alleges ineffective assistance of trial counsel. Although he claims there were "many errors throughout his trial," he only argues ineffective assistance of counsel based on his attorney's failure object to "the defective

17

nature of his indictment" and failure to request a mistrial after the jury heard about his indictment in another case.

{¶ 54} Both arguments involve count one of Sharpe's indictment in this case, which charged him with having a weapon while under disability. The predicate disability was his indictment in another drug case. But that indictment was not issued until after the traffic stop, meaning that the other indictment could not have served as a predicate disability. Although the trial court dismissed count one, Sharpe alleges ineffective assistance of counsel based on his attorney's failure to object to the State's reliance on the after-the-fact indictment as a predicate disability, thereby allowing the jury to hear testimony about it. He also contends his attorney should have requested a mistrial due to the issue.

{¶ 55} We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that the deficient performance prejudiced him. *Strickland* at 687; *Bradley* at paragraph two of the syllabus.

{¶ 56} Courts assess deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness." *Strickland* at 688. When making this determination, counsel's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Only when counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" has counsel engaged in deficient performance. *Id*. at 687. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

18

at 694. This requires the errors to be so significant as to "undermine confidence in the outcome." *Id*.

{¶ 57} Applying the foregoing standards, we see no ineffective assistance of counsel. Even if defense counsel provided deficient representation by failing to notice that the indictment in case no. 23CR725 did not exist at the time of the traffic stop, we see no reasonable probability that the result of Sharpe's trial would have been different. The trial court ultimately dismissed count one, which relied on the indictment in case no. 23CR725; the jury properly heard about Sharpe being under disability through a second count in this case; the jury acquitted Sharpe on a felony drug charge; and the prosecutor made clear in closing arguments that the State was not pursuing count one based on Sharpe's indictment in case no. 23CR725.

{¶ 58} We note too that the evidence supporting Sharpe's convictions was straightforward. There was no plausible explanation for the firearm found under the front of his car or the baggie of cocaine found behind the tree other than him placing them there. Based on our review of the record, we see no reasonable probability that the outcome below would have been different if defense counsel had realized the defect in count one sooner. We also see no reasonable probability that the trial court would have granted a mistrial if defense counsel had requested one. The introduction of evidence about the indictment in case no. 23CR725 was not significant enough to justify declaring a mistrial. The seventh assignment of error is overruled.

### III. Conclusion

{¶ 59} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.